The opinion of the court was delivered by
Brewer, J.:
This case comes before us on the ruling of the district court of Wilson county, sustaining a demurrer to plaintiff's petition. The petition alleges, substantially, that plaintiff owned a farm in Chautauqua county of the value of $5,000; that for the purpose of procuring a loan from the de *485 fendant Stover, plaintiff executed his promissory note payable to the order of Stover in five years, for the sum of $2,000, and also for the purpose of securing said note, executed a mortgage on his farm; that he delivered the note and mortgage to Confrey, the agent of Stover, directing him to surrender the note and mortgage to Stover on payment to Confrey for plaintiff of the said sum of $2,000, less a stipulated commission ; that Confrey, in fraud of the rights of plaintiff, delivered the note and mortgage to Stover, the payee therein named, without receiving from the said Stover any consideration therefor whatever. The petition then, as to defendants Cowles and Eldridge, goes on to allege that the said Stover, “with full knowledge of the foregoing facts as herein alleged) indorsed said note and assigned said mortgage, and then and there delivered the same to Cowles & Eldridge, who paid the said Stover no value therefor, but gave him, the said Stover, credit on an account held by said parties against said Stover, with said mortgage. And the plaintiff further alleges, that the said Cowles & Eldridge, on receipt of the said note and mortgage aforesaid, sold, indorsed, transferred and delivered said note and mortgage to some person to plaintiff unknown; the said purchaser paying to them, the said Cowles & Eldridge, the said sum of $2,000. And the plaintiff further says, that said purchaser received said note and mortgage without any knowledge of the plaintiff’s rights therein, but on the contrary, believed that the said Cowles & Eldridge were the absolute owners of said mortgage.” The petition also alleged that the note was negotiable; was therefore a valid claim in the hands of an innocent purchaser against him, the plaintiff, and that he was. lawfully bound to pay such note and mortgage. To this petition, Cowles & Eldridge filed a general demurrer, which was sustained by the district court, and this ruling is now the single question presented for our consideration.
It is not pretended that any liability would attach to Cowles & Eldridge if they purchased the note in the regular course of business for value before maturity without notice of the *486 plaintiff’s equities; but it is insisted that they parted with no value, but simply applied the mortgage on an antecedent debt of Stover’s. There is some little conflict in the authorities as to whether one who receives a note in payment of a preexisting debt can be regarded as a purchaser for value so as to hold the same free from all the equities between the original parties, and yet the large number and weight of authorities are in favor of the proposition that he is such a purchaser.
The authorities are collected in the second volume of the U. S. Digest, 1 series, p. 772, and arranged pro and con on this question. A repetition of the arguments advanced on the two sides and a review of the authorities would be a useless labor. It is enough for us to say that on this question we think the better reason is on the side of the majority, and that he who receives a note of a third party in payment of a preexistent debt parts with value, and is entitled to the protection of a purchaser for value.
But it is insisted by counsel for plaintiff that before a party can claim that he received a note in payment of a preexistent debt, it must appear that it was expressly agreed that it should be so received and a discharge given of such preexisting debt; and it is claimed that this petition discloses no such agreement — that the mere giving of credit on an account is not a payment unless both parties agree thereto.
2 pleadingment ot’preexisting debt. Counsel further say that it is not alleged that Stover ever assented to such disposition of the note and mortgage, or agreed that it should be credited on his account, and that the action of Cowles & Eldridge alone in so crediting does not make an agreement on the part of Stover, or discharge his preexisting debt. It is true that the petition nowhere alleges an express agreement between Stover and Cowles & Eldridge that this note should be taken and applied in payment of such preexisting debt, but the plain implication of the language of the petition is that such was jQ facf. ^ agreement> jfc js a general rule that the language of a pleading is to be construed against the pleader, *487 though not, it is true, in any harsh, technical or arbitrary way. Where the language is of doubtful import, and the pleading is challenged before trial, then the rule is to construe the pleading against the pleader, and this upon the ground that as he himself selects the language he should make his meaning clear. (Williams v. F. P. Soc., 1 Ohio St. 478; Lemon v. Stevenson, 36 Ill. 49; Vaughan v. Everts, 40 Vt. 526; Green v. Covillaud, 10 Cal. 317.) Now it is alleged that Stover indorsed the note and assigned the mortgage and delivered them to Cowles & Eldridge, and that they gave him credit on an account therefor, and in the absence of any further words of limitation or restriction, the natural conclusion from the allegations would be that all was done with the assent and upon the agreement of both parties. If Stover delivered the papers without receiving any present payment, and Cowles & Eldridge received the papers and credited the amount thereof on Stover’s debt, and there is no allegation that Stover objected to this, or demanded or expected payment in any other way, the inference would be that he assented to such application — that it was done with his knowledge and consent. If the pleader intended to charge that such application was without Stover’s consent, or contrary to the express agreement of the parties, it would have been very easy by the addition of a few words to have made this fact perfectly clear. In the absence of such further allegation, it seems to us that the court properly understood the petition as charging that the application of the note and mortgage on Stover’s preexisting debt was done with the knowledge and consent of Stover, and that the claim of plaintiff in this action to recover was based upon other grounds than the mere lack of an agreement between Stover and Cowles & Eldridge.
*488 „ „ ., SSehóMerofj piesumption. *487 Another proposition of counsel is, that it is a rule that when it is shown that commercial paper was illegally or fraudulently put in circulation, it devolves on the holder to show that he purchased for value before due and without notice; and that if proof of such fraud or illegality will cast on the holder the burden of showing himself an innocent purchaser, in like *488 manner an allegation in the petition of such fraud or illegality-will also raise the presumption that the holder had notice when he received the note, and is equivalent to an allegation that he had such notice. And counsel asks: Is it necessary for the plaintiff to allege facts which he is not required to prove?' Counsel in this fails to properly distinguish between the requirements of pleading and the rules in reference to presumptions. Presumptions of law need not be stated in the pleading, (Civil Code, § 130.) But this is not the rule as to presumptions-of fact. As a general rule, all the facts which are ingredients in the cause of action must be specifically alleged in the petition, even though upon the trial proof of certain of those facts will raise a presumption and be therefore prima facie evidence-of the existence of other facts. Thus, for instance, the possession of recently-stolen property is evidence from which a presumption of fact arises that the possessor is a thief. But it would notdoin charging the offense to simply allege thatthedefendant was in the possession of property recently stolen. The fact that he stole it must be distinctly charged. So here, the fact that the paper was illegally or fraudulently put in circulation-does not of itself give a .right of action against any party it 's found in possession of. A further £a(Jj mug£ exist, and that is, that he does not occupy the position of an innocent purchaser for value. Now this fact must be alleged in the petition, although it may be that upon the trial, proof that the paper was illegally or fraudulently put in circulation in the first instance will raise a presumption of fact that the holder is not an innocent holder, and cast upon him the burden of proving the bona fides of his possession. See the following cases: Gregory v. McFarland, 1 Duval (Ky.) 59; Meriden Brittannia Co. v. Whedon, 31 Conn. 118; VanDelandy v. Hall, 13 How. Pr. 458.
The judgment of the district court will therefore be affirmed.
All the Justices concurring.