# EMMERSON v. BOTKIN.

No. 495. ·Opinion Filed May 10, 1910.

(109 Pac. 531.)

1.  PLEADING—General Demurrer to Petition. A general. demurrer
    to a petition, which attempts to state several causes of action,
    should be overruled if any of the statements of causes of action
    contained in said petition are good.

2.  PLEADING—Demurrer—Failure to Amend—Presumption. In a
    case where a pleading is challenged before trial by demurrer, its
    language, where doubtful, will be construed against the pleader
    upon the ground that, as he selects the language, he should make
    his meaning clear, and where in such a case a demurrer is sus-
    tained on account of the insufficiency of a pleading, and no ap-
    plication for amendment is made it will be presumed that the
    facts to justify it do not exist.

3.  PLEADING—Sufficiency of Allegations. Essential facts neces-
    sary to be shown in order to entitle a party to the relief de-
    manded and to which he supposes himself entitled should be
    stated in the pleadings by allegation or averment, and not by
    way of recital.

4.  CONTRACTS—Immorality—Contract for Services—Validity. An
    express contract for services to be rendered by a woman for a
    man as housekeeper and servant is valid and enforceable, al-
    though the parties entering into it live together in a state of
    concubinage during the time the services are being rendered,
    unless the contract was made· in contemplation of such illicit
    relationship; and in a case where the claim for compensation is
    based on a contract and grows out of the lawful services actu-
    ally rendered, and no part of the same has reference to the
    meretricious relationship existing between the parties, the same
    is enforceable.

(Syllabus by the Court.)

*Error from District Court, Lincoln County; W. N. Maben, Judge.*

Action by Mary A. Botkin against H. S. Emmerson, admin-
istrator of Joseph D. Morris. Judgment for plaintiff, and defend-
ant brings error. Affirmed.

*M. D. Owen* and *C. A. Neeley,* for plaintiff in error.
*Hoffman & Robertson,* for defendant in error.—On ef-

fect of general demurrer:   6 A. & E. Enc. Pl. & Pr., pp. 301, 305; *Couse v. Phelps,* 13 Kan. 353; *Houston v. Delahay,* 14 Kan. 125; *Ry. Co. v. Ins. Co.,* 2 Kan. App. 374; *Townsend v. Burr* (Kan.) 60 Pac. 477; *Hanenkrat v. Hamil,* 10 Okla. 219. On question of immorality in contracts:   8 Am. & Eng. Ency. Law, 682, 25 Cyc. 1075, *et seq.; Gresham v. Lee,* (Kan.) 60 Pac. 312; 19 Am. & Eng. Ency. Law, p. 201; *Morrisey v. Fawette,* 68 Pac. 352; *Ah How v. Furth,* 43 Pac. 640; *Grave v. Pemberton,* 29 N. E. 177; *Knight v. Knight,* 33 N. E. 456; *Jackson v. Null,* 42 Pac. 603; *Story v. Story,* 27 N. E. 573; *Taggart v. Tevany,* 27 N. E. 511.

DUNN, C. J.   This case presents   error from the   district court of Lincoln county.   Defendant in error, who will hereafter be denominated "plaintiff", filed her action against H. S. Emmerson, as administrator of the estate of Joseph D. Morris, deceased, to recover on two causes of action, in the first of which she alleges that Joseph D. Morris, deceased, during his lifetime, was indebted to her for personal services as housekeeper and servant beginning November 1, 1887, and terminating on his death, March 6, 1906; that said services consisted of general housework, farmwork, nursing, and caring for him during his various sicknesses, and were reasonably worth the sum of $3 per week, or $2,859. The petition then recites the death of said Morris, the appointment of Emmerson as administrator, the submission to and the allowance by him of plaintiff's claim in the sum of $1,400, and the rejection of said claim by the probate court.   The second cause of action relates to certain services which plaintiff alleges she performed in caring for and protecting the estate of decedent, for which she prays a judgment of $100.   To this petition defendant filed a general demurrer, which was by the court overruled, to which exception was saved.   Counsel insist that this demurrer should have been sustained at least to the second cause of action.   The rule in reference to demurrers of this character, where there is more than one count in a petition, is stated in the case of *Hanekratt v. Hamil,*

10. Okla. 219, 61 Pac. 1050, wherein the Supreme Court of the territory held:

"A general demurrer to the whole of a petition, which contains several statements of causes of action, should be overruled if any of the statements of causes of action contained in said petition are good."

Counsel does not contend that the first cause of action is not well stated; hence no error was committed by the court in overruling the demurrer.

To this petition defendant then filed answer: First, a general denial, and, second, a plea of the statute of limitations; and in a supplemental answer stated, in substance: (2) That Mary A. Botkin, plaintiff below, formerly resided on a farm in the state of Iowa, and in a residence near the place and upon the same farm where Joseph D. Morris and his wife and family resided. That the two residences were only a short distance apart, and that the plaintiff and decedent, Morris, became intimate with each other and for several years sustained criminal relations, each with the other, at that place. (3) That the friendly and criminal relations of the plaintiff and the deceased became so notorious as to impel Morris and his wife to separate; Morris's wife going to Illinois, where she resided upon property owned by Morris until the time of her death shortly thereafter; that the notorious relations between the plaintiff and the deceased occasioned a separation of Mrs. Botkin and her husband, whose whereabouts is unknown. (4) That Morris disposed of his farm in Iowa, and together with the plaintiff and her two children removed to Oklahoma and purchased a farm near the town of Sparks in Lincoln county, which is now a part of the estate of the deceased of which plaintiff in error is administrator; and that afterwards the deceased purchased a residence in the town of Sparks, in said county and state, and that from the time of the removal of the plaintiff and the deceased from the state of Iowa, until the recent death of said Morris, said plaintiff and deceased lived and cohabited together unlawfully and in contravention of the laws of the land and the statute in such cases made and provided; that no children were begotten and born

of this immoral relation. (5) The administrator alleges a set-off against the plaintiff by claiming that Joseph D. Morris maintained and supported her for a period of 18 years and did pay for and provide the sustenance and education of her two children for a period of 18 years, and during all the said time the said Joseph D. Morris, prior to the commencement of the aforesaid action, did provide for said Mary A. Botkin and her two children all the necessaries of food and clothing and comforts of life consistent with said Morris' means and station in life in the amount of, to wit, $300 per annum, during said 18 years, aggregating in all $5,400. (6) That plaintiff and deceased continued to reside together and cohabit unlawfully until the death of the said Joseph D. Morris on the 6th day of March, 1906, at which time he died in his residence in Sparks. (7) That any contract or agreement made between the plaintiff and the said Joseph D. Morris, wherein and whereby he was to pay her, or expend on her account, any money, funds, or emoluments, whatsoever, in consideration of the immoral relation set forth in her petition, is invalid and void as contrary to law and against public policy.

To the supplemental answer thus filed, the plaintiff filed a demurrer, which was by the court sustained, except to that portion contained in paragraph 5, relating to the alleged indebtedness of plaintiff for the care, education, and the maintenance of herself and children. To this ruling defendant excepted. A reply was then filed, whereupon defendant filed an affidavit for a continuance which was by the court denied and to which exception was saved. Trial was then had to a jury, which resulted in a verdict for the plaintiff in the amount of $1,400, and the case has been brought to this court for review.

The principal assignment relied on in this court is that the trial court erred in sustaining the plaintiff's demurrer to paragraphs 2, 3, 4, and 6 of the supplemental answer. It will be noted that plaintiff's first cause of action avers that Morris was indebted to her for services as housekeeper and servant, extending over the period named, and that the specific services rendered were general

housework, farmwork, and nursing and caring for the defendant during his various illnesses. The general denial filed by the defendant necessarily put in issue all of the material allegations of the petition essential for plaintiff to establish in order that she might recover. Considering this denial in conjunction with the statements contained in the answer which were stricken out, defendant probably intended to plead that the relationship existing between plaintiff and the deceased was not that of master and servant, but was an immoral relationship, and that the contract which it is alleged was entered into was for this purpose, and not for the lawful one pleaded. Counsel for defendant in his brief argues the case on the assumption that this is the effect of that portion of the supplemental answer which was stricken out. Our statute provides (section 5655, Comp. Laws Okla. 1909) that, "in the construction of any pleading for the purpose of determining its effect, its allegations should be liberally construed with a view of substantial justice between the parties." While under this the actual allegations and averments of all pleadings must be so construed that substantial justice may be done between the parties, yet this cannot be held to require that essential averments lacking in a pleading shall be construed into it, or that a necessary averment be supplied on inferences drawn from other facts alleged unless such averment must logically and necessarily be so inferred therefrom. *Reddick v. Webb et al.*, 6 Okla. 392, 50 Pac. 363. The Supreme Court of Kansas, with this same statute before it, has held that within it, where a pleading is challenged before trial by demurrer, its language, if doubtful, is construed against the pleader upon the ground that, as he selects the language, he it is who should make his meaning clear. *Beadle v. Kansas City, F. S. & M. Ry. Co.*, 48 Kan. 379, 29 Pac. 696; *Draper v. Cowles*, 27 Kan. 484. It is reasonable to presume that when a pleading is challenged by a demurrer which is sustained on account of its insufficiency, if the pleader's case will admit of a further statement, he will make it, and, where he does not, that the facts to justify it do not exist.

See cases cited under the following declaration in volume 4, Ency. Pleading & Practice, p. 746:

"In the construction of a pleading nothing will be assumed in favor of the pleader which has not been averred, as the law does not presume that a party's pleadings are less strong than the facts of the case will warrant."

Paragraph 7 of the answer referred to contains no averment that the contract or agreement made between the parties on which plaintiff relies in her petition was in consideration of the immoral relation referred to, or that it was an incident thereto or grew out of it, but contains merely a recital based upon an assumption not justified by any statement made either previously or in the paragraph itself, and the rule in such cases is that essential facts necessary to be shown in order to entitle a party to the relief demanded and to which he supposes himself entitled should be stated in pleadings by allegation or averment, and not by way of recital Bliss on Code Pleading (2d Ed.) § 318.

Taking the entire stricken portion of the answer together, nothing more is contained therein than a statement of a number of facts showing that, during the time covered by the services for which plaintiff seeks compensation, the deceased and plaintiff were living in a state of adultery, or, as counsel puts it in their brief, plaintiff was living with deceased as his housekeeper and mistress, and that she is not entitled to recover because the law will not imply any promise to pay for services of one living as housekeeper and mistress of a party. While this statement of the law is correct, yet it does not follow that the law will not enforce an express contract for services so rendered, notwithstanding the fact that outside the contract the parties were living as stated. Plaintiff's petition contained no statement as to the unlawful relationship contended for, and was sufficient in its terms to admit evidence of the express contract which was proved on the trial.

To sustain their contention, reliance is placed by counsel upon two cases. *Walraven v. Jones*, 1 Houst. (Del.) 355, and *McDonald v. Fleming*, 51 Ky. 285. The plaintiff in the case of *Walraven v. Jones*, as in the one at bar, claimed compensation for work and

labor as a domestic servant covering a period of 27 years at the rate of $3 per week. The man for whom she claimed to have worked died, and his administrator was made defendant. The plaintiff proved that she had performed the services alleged in decedent's family during the whole period mentioned, and that deceased had declared a short time before his death that he had provided for her in his will; but no will was discovered after his death. The defense to the action was that at the time when plaintiff entered the service of deceased, if she ever was in his employ as a domestic servant, he was a married man, and his wife and several children were living with him as his family; that an improper intimacy existed between him and the plaintiff on account of which his wife left him; and that this improper relationship continued until the time of his death. Under these facts, the court held that no express contract was proved, and that under the circumstances the law would imply no contract or promise to pay for her services.

The case of *McDonald v. Fleming, supra,* is similar to a number of other cases found in investigating this question, but it is not in point, as in that case the plaintiff and defendant had for a number of years lived together and cohabited as husband and wife, and the rule in such cases was announced by the court that:

"As she (the plaintiff) occupied the attitude of a wife without having been one, the services she performed in acting as housekeeper resulted from the position in which she had placed herself, and do not in law entitle her to any compensation."

Another similar case arose in the state of Massachusetts. *Robbins v. Potter,* 11 Allen, 588. In that case the woman offered to prove that, although she lived with defendant as his wife, the marriage was void because she had a former husband living. She sued for compensation for services which she had rendered while so living with the defendant, and the Supreme Court held that:

"Her offer to prove that the marriage was void, because she had a former husband living at the time, and that he knew it, had no tendency to prove an agreement by him to pay for the services rendered in his family while living with him as his wife. That the pretense of being his wife was a mere cover for her adultery and bigamy, and that he was equally guilty with her, did not

make the value of the services which she rendered in that relation a debt from him to her. The facts negatived the implication of a contract. The offer to prove that the labor was performed without any reference to their cohabitation, and that the cohabitation did not form any part of the consideration for the labor, was unavailing, because she had already admitted that it was for the work done in his family while thus living with him."

This same case was again before the Supreme Court of Massachusetts and is reported in 98 Mass. 532, and in passing on the same the court held:

"There is no contract implied by law to pay for services rendered between parties living together as husband and wife."

The same principle was also enunciated in the case of *Cooper v. Cooper et al.,* 147 Mass. 370, 17 N. E. 892, 9 Am. St. Rep. 721.

The court, having eliminated from the answer all reference to the alleged unlawful cohabitation and living together between the parties, likewise excluded all evidence in reference to it. Evidence was admitted, however, which established an express contract between the decedent and plaintiff to pay her for such services as she was required to render, and the rule in such cases appears to be that such a contract is valid and enforceable, although the parties entering into it live together in a state of concubinage during the time the services are rendered, unless the contract was made in contemplation of such illicit relationship. In other words, if the claim for compensation arises and grows solely out of the lawful services actually rendered, and no part of the same depends on or has reference to the meretricious relationship existing between the parties, the same is enforceable; but, if the relationship between the parties is brought about and exists for the purpose of unlawful and immoral association, then the fact that services are also rendered will afford no ground for recovery for their value. This rule appears to be supported by the only authorities we have found on the subject, among which we note the following: *Lytle v. Newell* (Ky.) 68 S. W. 118; *Rhodes v. Stone,* 63 Hun, 624, 17 N. Y. Supp. 561. The foregoing are declarative of the common law and support the rule we have announced, but under the civil law it

seems a contract will even be implied to sustain a claim for such services. See the following cases from Louisiana: *Simpson v. Normand et al.,* 26 South. 266, 51 La. Ann. 1355; *Succession of Pereuilhet,* 23 La. Ann. 294, 8 Am. Rep. 595; *Viens v. Brickle* (La.) 8 Mart. (O. S.) 11.

The syllabus to the case of *Lytle v. Newell, supra,* is as follows:

"A contract between plaintiff and defendant, by which plaintiff undertook to render services as defendant's housekeeper for a stipulated money consideration, is valid and enforceable, though the parties live together in a state of concubinage during much of the time the services were being rendered, unless the contract was made in contemplation of such illicit relationship."

In the case from the Supreme Court of New York (*Rhodes v. Stone, supra*), the plaintiff brought action against the administrator of the estate of a man for whom she claimed to have worked for over 30 years. The court allowed recovery notwithstanding the fact that the parties had lived and cohabited together apparently as husband and wife, and were known and recognized as such by their neighbors and acquaintances, on the theory that the relationship existing between them did not preclude an express contract to pay for the services rendered, but placed the burden upon her to prove that such a contract existed, holding that "where a woman cohabits with a man, keeps house for him, and assists on the farm, in order to recover for the work and labor done, she must prove an express contract." In the consideration of the case the court said:

"The respondent cannot rely upon an implied agreement to pay her for her labor. Unless the evidence proves an express promise of the intestate to pay her, the verdict cannot be sustained; and, if the illicit commerce between the parties was any part of the basis of the promise to pay for respondent's labor, the agreement was void. The relations of the parties did not necessarily forbid an express contract between them that the intestate would pay respondent for her labor. *Cooper v. Cooper,* 147 Mass. 372, 17 N. E. 892 [9 Am. St. Rep. 721]. There is no suggestion in the evidence that the illicit relations were to form any part of the consideration of the contract. Notwithstanding the improper manner of her life with the intestate, she was at liberty to make an

agreement with the intestate, to perform labor for him for pay. There was sufficient evidence of such an agreement to sustain the verdict of the jury."

In holding that opponent was entitled to recover notwithstanding the fact showed she lived with decedent as his mistress, the Supreme Court of Louisiana, in the case of *Succession of Pereuilhet, supra,* said:

"An employer cannot pay off a female employee by robbing her of her virtue. Such a method of extinguishing an obligation is not known to the law. If concubinage had been alleged and proved to have been the motive and cause of the parties living together in the same house in the first instance, and the services in question to have been merely incidental to such a state of living, our conclusion might have been different; but such is not the allegation, much less the proof; and we certainly will not presume that such was the fact."

The evidence in the record unobjected to shows that plaintiff began her services for the deceased as his servant, but that they had never had a settlement, and it is stipulated by the parties that just prior to his death deceased requested a deed conveying to her the farm upon which they then lived and certain other property which he owned in the town of Sparks should be made and delivered to her, but that his near approach to death was such that the notary declined to have him sign and execute the instrument. She testifies that she and her husband went to work for deceased by the week, in November, 1887; that the decedent's wife left him some time in the previous June; that all parties were at that time living in Iowa. She states that the exact amount she was to receive was not agreed upon, but that decedent said that whatever she and her husband charged he would pay. They remained in Iowa for five years, moving to Oklahoma in December, 1892; she bringing with her a son and daughter. In March, 1893, they moved to a farm, where she did general housework and made garden, did the cooking, washing, sewing. ironing, scrubbing, milking, churning, and everything belonging to a farm. When she came she brought with her about $300 which her husband gave her which was used on the place; Morris investing some of it for her.

During the last three or four years prior to his death, the deceased was feeble, and about 18 months before he died had a stroke of paralysis, and during all of his illness she nursed and took care of him to the day of his death at the age of 71 years.

There was no objection to, or denial of, the evidence given by plaintiff that her original contract with the deceased was to serve him as a domestic for such wages as she charged and as might be agreed upon between them, and, under these facts plaintiff was entitled to recover the compensation to which she could show under her contract she was entitled. The mere fact that she may also have lived with deceased in a state condemned by law gives no license to those who are justly in her debt to deny her just deserts. Her earnings and accumulations lawfully provided for between herself and her employer are as sacredly her own, notwithstanding the alleged illicit association, even if it be true, as if she were as pure and as virtuous as any, and the estate against which she is proceeding should not be gratuitously enriched to her detriment and spoliation except in response to a legal edict, clear and uncertain.

The application for a continuance was addressed to the sound discretion of the trial court, and, as it related to evidence calculated to support the rejected portions of the answer, its denial was not error.

The judgment of the trial court is therefore accordingly affirmed.

All the Justices concur.