MARÍA DEL CARMEN MORALES, demandante y apelante, v.
ESPERANZA CRUZ VÉLEZ, demandada y apelada.

No. 3548.—*Visto:* Junio, 9, 1925. *Resuelto:* Enero 14, 1926.

1. CONCUBINATO—BIENES ADQUIRIDOS DURANTE LA RELACIÓN Y DERECHO A LOS
   MISMOS—ACCIÓN PARA RECLAMAR— DEMANDA— SU SUFICIENCIA. — Una de-
   manda para recobrar la mitad de unos bienes adquiridos por la demandante
   y su concubino es insuficiente cuando el supuesto derecho de la demandante
   a los mismos se hace depender de las relaciones ilícitas que sostenían, y la
   alegación en la demanda de que ella contribuyó para adquirirlos con su tra-
   bajo, su economía, su cooperación y sus recursos no es de importancia.
2. EQUIDAD—JURISDICCIÓN, PRINCIPIOS Y MÁXIMAS—PRINCIPIOS Y MÁXIMAS DE
   EQUIDAD—APLICACIÓN DE LOS PRINCIPIOS DE EQUIDAD—EXISTENCIA DE PRE-
   CEPTO LEGAL.—Existiendo un precepto legal claro y terminante, la aplicación
   de los principios de equidad es materia subsidiaria.
3. APELACIÓN Y ERROR — SEÑALAMIENTO DE ERRORES — SEÑALAMIENTO SIN ARGU-
   MENTACIÓN.—Cuando un alegado error—por no haberse permitido a los tes-
   tigos contestar a determinadas preguntas—sólo se enuncia en el alegato sin
   más discusión y no se refieren dichas preguntas ni los testigos a quienes se
   hicieron, no hay base para discutirlo.
4. CONCUBINATO—BIENES ADQUIRIDOS DURANTE LA RELACIÓN Y DERECHO A LOS
   MISMOS — ACCIÓN PARA RECLAMAR — DERECHO DE ACCIÓN Y DEFENSAS. —
   Cuando en acción para recobrar la mitad de unos bienes adquiridos durante
   el concubinato, se prueba que ese estado fué pre-existente al desarrollo e
   incremento de los negocios y bienes del causante y que la cooperación y tra
   bajos de la mujer demandante sólo fué incidental a sus funciones de con-
   cubina, ésta no tiene derecho alguno a la mitad en los mismos.
5. APELACIÓN Y ERROR—PRESENTACIÓN Y RESERVA EN LA CORTE INFERIOR DE LOS
   FUNDAMENTOS DE REVISIÓN—"ISSUES" Y CUESTIONES EN LA CORTE INFERIOR
   —CUESTIONES NO ALEGADAS NI PEDIDAS EN EL TRIBUNAL INFERIOR.—No co-
   mete error una corte inferior al no considerar un punto que ni fué alegado
   ni pedido ante la misma.

SENTENCIA de *Angel Acosta,* J. (Mayagüez), declarando sin lugar
la demanda, con costas. *Confirmada.*

*Alfredo Arnaldo, J. H. Brown* y *C. Ruiz Nazario,* abogados de la
apelante; *José Sabater,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del
tribunal.

En esta apelación se discuten ciertos derechos que se
originan, según se alega, dentro de una relación ilícita que
se conoce con el nombre de concubinato.

Carmen Morales inició este pleito para que se declare
que es dueña en pro indiviso de una mitad de los bienes que
describe en la demanda y solicita asimismo que se le ponga

en posesión de los mismos con devolución de sus rentas, productos y utilidades.

La demandante alegó originalmente que desde 1879 ella y Avelino Cruz Toro habían convenido poner en común to-dos los bienes y el trabajo de ambos para partir entre ellos de por mitad las ganancias que pudieran obtener. Se refiere el objeto para el cual fué constituída la sociedad, las funciones de uno y otro socio, los bienes que aportaron y finalmente se hace una descripción de los bienes que adquirieron para ambos, aun cuando figuraban a nombre de Avelino Cruz. Este último falleció en noviembre 15, 1921, sin haber otorgado testamento, y dejó una hija natural reconocida, nombrada Esperanza Cruz y Vélez, la que fué declarada heredera abintestato del causante por resolución de noviembre 18, 1921, siendo ella la persona contra quien se dirige esta acción.

Después de oirse prácticamente toda la prueba, pues solamente faltaba unir a los autos, a iniciativa de la demandante, una certificación del registro de la propiedad, la demandante enmendó su demanda para conformarla con la prueba practicada, sin oposición de la otra parte, y las enmiendas que consideramos esenciales pues ellas varían la teoría de la demanda original, dicen como sigue:

"I. Avelino, conocido por Lino Cruz y Toro, y la demandante estuvieron viviendo unidos y haciendo vida común en una misma casa y hogar desde el año 1880 hasta el 15 de noviembre de 1921, en que falleció Avelino, conocido por Lino Cruz y Toro.

"II. Con los recursos, el trabajo, la cooperación y las economías de ambos, en un período de más de cuarenta años, Avelino Cruz y Toro y la demandante levantaron un capital, compuesto de bienes, derechos, acciones y metálico, que se relacionó en el hecho sexto de la demanda, que por esta demanda enmendada se enmienda y la descripción de las cuales se da por reproducida ahora en esta alegación.

"III. Los bienes y derechos a los que el hecho anterior se refiere están a nombre de Avelino, conocido por Lino, Cruz y Toro; pero la demandante alega que ella es dueña de una mitad de cada uno

de dichos bienes, por haber sido adquiridos mientras vivió haciendo vida común con Avelino Cruz y Toro, habiendo contribuído para adquirirlos, con su trabajo, su economía, su cooperación y sus recursos.''

Los errores señalados por la apelante como consecuencia de haber declarado la corte inferior sin lugar la demanda, se enumeran en el orden siguiente:

''1. El juez sentenciador erró al declarar que la demanda no adujo hechos suficientes para constituir una causa de acción.

''2. Incurrió en error el juez sentenciador al declarar que los servicios (trabajo) de la demandante, que produjeron ganancias, fueron incidentales a la relación de concubinato.

''3. La corte erró al declarar que no hubo prueba demostrativa de que la demandante contribuyera en forma alguna a la adquisición de las propiedades del causante de la demandada.

''4. La corte erró al declarar que siendo la causa y el motivo de vivir juntos la demandante y Avelino Cruz, no pudo existir sociedad o comunidad de bienes legal entre ellos.

''5. Incurrió igualmente la corte sentenciadora en error al declarar que no se había probado la existencia de un contrato de sociedad entre la demandante y Avelino Cruz.

''6. Aun en el supuesto de que no hubiera prueba suficiente de sociedad, la corte erró al no declarar que la demandante tenía derecho a la devolución del valor de los bienes aportados por ella que utilizó y apropió Avelino Cruz con sus ganancias.

''7. La corte inferior erró al no permitir que los testigos de la demandante declarasen sobre transacciones entre ella y Avelino Cruz y sobre las declaraciones de éste.

''8. La sentencia apelada está en contra del peso y la preponderancia de la prueba.''

[1, 2] En realidad la prueba no sostenía la constitución de una sociedad universal entre la demandante y su causante Avelino Cruz. De ahí fué que surgió la nueva teoría de la demanda enmendada haciéndose depender la causa de acción de la unión ilícita del concubinato, alegándose específicamente que la demandante es dueña de una mitad de cada uno de los bienes descritos ''por haber sido adquiridos mientras vivió haciendo vida común con Avelino Cruz y Toro,

habiendo contribuído para adquirirlos, con su trabajo, su economía, su cooperación y sus recursos.''

Cabe preguntar, pues, si tal alegación es suficiente para determinar una causa de acción, siendo éste el primer error que discute la apelante.

Aunque no hay ningún precedente en las decisiones de esta corte que directamente resuelva las cuestiones envueltas en este caso, la verdadera doctrina fué, sin embargo, esbozada ligeramente en el caso de *Correa* v. *Quiñones,* 29 D.P.R. 54, donde por primera vez, se dijo:

''Ciertamente el concubinato no puede ser por sí solo generador de derechos de clase alguna en cuanto a los que viven en tal estado y condición y desde luego el concubinato no puede originar una sociedad legal de gananciales;   *   *   *   ''.

Esta doctrina así enunciada es la exposición clara de preceptos positivos del Código Civil que bajo el epígrafe ''De la sociedad de gananciales'' que se contiene en el título III, capítulo IV, libro cuarto del mismo, no reconoce otros efectos civiles que los que se derivan del matrimonio a menos que se pacten capitulaciones matrimoniales.   Arts. 1282 y 1310–11.   La ley no hace declaración alguna en cuanto al concubinato pero por esclusión, *expressio unius est exclusio alterius,* quedó eliminado de nuestras leyes el reconocimiento de tal unión ni menos que por sí solo pueda equiparar sus efectos al consorcio legal del matrimonio.   El legislador se ve a veces en la imposibilidad de suprimir de raíz en el seno de la sociedad ciertas costumbres ilícitas por ser materia más bien de educación que de legislación, pero no reconociéndole efectos civiles es el medio indirecto de no alentarlas en su desarrollo y de que traten de subsistir en la vida social.   Aquí tal vez podríamos detenernos en la consideración de este asunto para decir que la demanda haciéndose depender solamente del concubinato, teñido del sello inmoral que lleva en sí mismo, no es suficiente para sostener lo que en ella se pide.   Pero se alega además por el

apelante que éste es un caso en equidad y se trata para ello de hacer valer ciertos principios en que se basan las decisiones de otros estados en relación con circunstancias que en ocasiones giran alrededor del concubinato. Aparte de que en nuestro sistema, existiendo un precepto legal claro y terminante, la aplicación de los principios de equidad es materia subsidiaria, el consensus general de las autoridades se pronuncia en sentido de considerar sin efecto legal todo contrato entre partes cuyo motivo, causa o consideración se basa en la relación ilícita del concubinato.

El caso de *Mitchell* v. *Fish* (97 Ark. 444, 134 S. W. 940), 36 L.R.A. (N.S.) 838, de la Corte Suprema de Arkansas, y que citan una y otra parte en sus alegatos, sostiene la doctrina general expuesta. La apelante se apoya sin duda en este caso porque habiendo declarado en él la corte inferior que el contrato de sociedad estaba contaminado con la inmoralidad y no sostuvo la reclamación, la Corte Suprema revocó la sentencia ordenando que se repartiera el producto de la venta de la propiedad que fué adquirida durante el concubinato. Sin embargo, las circunstancias peculiares del caso parecen hacer de él una excepción y la regla general a que nos hemos referido se mantiene en su esencia. El juez Hart, que emitió la opinión del tribunal, entre otras cosas, dice:

"La resolución de hecho de la corte inferior de que existía una sociedad entre las partes, no es contraria al peso de la evidencia y por lo tanto su resolución en este particular se sostiene. Pero erró al desestimar la demanda por falta de equidad, porque la demanda no la presentó ella para hacer cumplir el contrato de sociedad, o cualquiera de sus estipulaciones. La sociedad se terminó cuando la propiedad se vendió. * * * La cuestión de si el contrato de sociedad era nulo entonces por ser en contra del orden público, no es la cuestión que predomina en el caso, sino que la cuestión es que si un socio ha recibido los productos de una sociedad y ha convenido voluntariamente con su consocio en una división de las mismas, es responsable al consocio de la participación del producto de la venta.

.. ''Al discutir los principios de ley aplicables a un estado de hechos semejantes a aquellos que aparecen de los autos, la corte en el caso de Morgan v. Morgan, 1 Tex. Civ. App. en la página 319, 21 S.W. pág. 156, dijo lo siguiente: 'Aplicando estos principios al caso presente, si se admite que las relaciones de John E. Morgan y la apelante eran ilegales, y que el contrato celebrado entre ellos de vivir juntos y dividir la propiedad que pudieran acumular no sostendría una acción a nombre de cualquiera de los mismos, de ser establecida fundada en dicha propiedad, creemos, sin embargo, que no puede decirse que después de haber sido celebrado voluntariamente el contrato por ambos, y de ser adquirida la propiedad, las cortes rehusarán reconocer sus respectivos intereses en ella.

''No es necesario decidir si la relación de concubinato entre las partes en este caso fué incidental y no fué el motivo y causa de vivir ellos juntos como marido y mujer y formar la sociedad; porque sostenemos que aunque la sociedad pueda ser ilegal por la consideración de vivir las partes ilegalmente, como marido y mujer, sin embargo, cuando el contrato ha sido terminado, sin ayuda de la corte, por los actos voluntarios de las partes, y una división de los productos ha sido convenida, tal división de productos forma un nuevo contrato, que es colateral y no está contaminado por el contrato original; y el socio que tiene derecho a la participación puede hacer valer su derecho ante las cortes.''

Las notas que se contienen en la misma página del caso de Mitchell, *supra,* con las palabras ''Del derecho a invocar la ayuda de las cortes para determinar los derechos a la propiedad acumulada en común por las partes viviendo en relaciones ilícitas,'' no alteran en nada el principio sustancial. El cuarto párrafo de la nota dice:

''Los casos soportan la regla de que un convenio para llevar a cabo un negocio o acumular propiedad es válido y ejecutorio, aunque las partes estaban sosteniendo relaciones sexuales ilícitas entre ellos durante el período cubierto por el contrato, a menos que el contrato fuera hecho en contemplación de tal relación ilícita y fuera ésta la consideración del contrato.''

Siguen a este párrafo los casos de *Viens* v. *Brickle,* 8 Mart. (La.) 11; *Delamour* v. *Roger,* 7 La. Ann. 153. Estos casos, así como el de *Emmerson* v. *Botkin,* (26 Okl. 218,

109 P. 531), 29 L.R.A. (N. S.) 787, y Pereuilhet, on opposition of Doria Hautho, 23 La. Ann. 294, sostienen en general igual conclusión. Parece, no obstante, que el hecho de haberse accedido a la reclamación en dichos casos ha sido tal vez el motivo de ofrecérlos la apelante para sostener su contención. No importa esto. A poco que se examinen se verá en todos ellos que el concubinato no aparece siendo la causa de la acción.

En el caso de *Emmerson, supra,* la demandante había tenido relaciones ilícitas con el causante y optó por reclamar una compensación en dinero por servicios prestados como ama de llaves, produciendo evidencia de que existió el convenio expreso de pagar dichos servicios, sin tener en cuenta el concubinato, y la corte se expresó así:

"Un contrato expreso por servicios que han de ser prestados por una mujer a un hombre como ama de llaves y sirviente, es válido y ejecutorio, aunque las partes que lo celebren vivan en un estado de concubinato durante el tiempo en que los servicios se prestaron, a menos que el contrato se haya hecho en contemplación de tal relación ilícita; y en un caso en que la reclamación por compensación está basada en un contrato y surge de los servicios legales positivamente prestados y ninguna parte de los mismos tiene referencia a las relaciones meretricias existentes entre las partes, es ejecutorio."

Y en el de *Pereuilhet,* parte del sumario dice:

"El hecho, si se probara, de que la enfermera o ama de llaves vivía con el hombre que ella atendía y cuidaba como su concubino, no perjudica o rebaja su reclamación por salarios, a no ser que alegue y demuestre que el concubinato fué el motivo y la causa de vivir ellos juntos primero, y los servicios suministrados eran meramente incidentales a ese modo de vivir."

En el caso de *Stringer* v. *Mathis,* 41 La. Ann. 987, se niega una reclamación como las anteriores, diciendo la Corte Suprema de Louisiana:

"Siendo satisfactoria para nosotros la prueba en este caso de que los servicios por los cuales se reclama el pago no tenían ningún otro

motivo sino el concubinato preexistente de las partes y que fueron meramente incidentales a tal relación, la demandante no puede reclamar remuneración por ellos;''

o cuando la reclamación por servicios como ama de llaves está ligada y unida con la remuneración como concubina que no sea distinguible. *Simpson* v. *Normand,* 51 La. Ann. 1355, 36 So. 266.

Este caso se basa en la autoridad del de Stringer, y comentándose en este último el de Viens, la corte expone:

''En el caso de *Viens* v. *Brickle,* 8 Martin 11, la corte declaró sin lugar una defensa de concubinato pero en la opinión se decía, después de admitir el hecho del concubinato, lo siguiente:

'' 'Este, sin embargo, no parece haber sido el motivo de estar ellos juntos sino más bien la consecuencia de la familiaridad que una unión íntima de intereses puede crear entre personas de diferentes sexos. Nosotros, por tanto, no podemos considerar esta circunstancia como que impide o anula cualquier derecho que pueda ella tener sobre el demandado para una remuneración, etc.'

''Implicando claramente que si el concubinato hubiera sido preexistente y el motivo de vivir ellos juntos, la defensa hubiera sido suficiente.''

El caso de *Lawson* v. *Lawson,* 30 Tex. Civ. App. 47, 69 S.W. 246, así como otros de igual clase que contiene la nota del de *Mitchell* v. *Fish, supra,* entran en un campo distinto a los ya analizados. Se trata de matrimonios putativos en que habiendo buena fe en las relaciones sexuales por una de las partes, sus derechos quedan protegidos en aquellos estados en que no rige la ley común.

En el último caso de *Malady* v. *Malady,* 25 La. Ann. 448, que queda por examinar, de los citados por la apelante, la que reclama es la esposa legítima y no vemos la relación que puede tener en esta acción.

Si asumiéramos que el presente caso fuera uno al que pudieran ser aplicables los principios en equidad que se desenvuelven en los casos examinados, no aparece, sin embargo,

de- los términos de la demanda enmendada alegación alguna que refiera la existencia de algún convenio o sociedad universal de gananciales celebrado entre la demandante y su causante, independiente de la vida común o relación sexual que mantuvieron durante el período de años que se indica. El derecho de la demandante en los bienes, si es que lo tuviera, se hace depender de las relaciones ilícitas que sostenían, pues esencialmente se alega que dicha demandante es dueña de la mitad de cada uno de ellos, "por haber sido adquiridos mientras vivió haciendo vida común con Avelino Cruz y Toro." No es importante que se añada, "habiendo contribuído (ella) para adquirirlos, con su trabajo, su economía, su cooperación y sus recursos," toda vez que el mero hecho de que la propiedad fué adquirida por el trabajo y gastos mutuos de las partes mientras vivían juntos no creará una sociedad o comunidad de. intereses en la propiedad, a falta de un convenio de que las partes tengan participación en el dominio de la propiedad. *Harris* v. *Hobbs,* 22 Tex. Civ. App. 367, 54 S. W. 1085.

Hemos llegado, por consiguiente, a la conclusión de que la demanda no es bastante para determinar una causa de acción.

[3] El error séptimo solamente se enuncia en el alegato sin más discusión. No se refieren las preguntas que no fueren permitidas contestar. a los testigos, ni el nombre de los testigos. No hay base para estudiarlo.

[4] Los restantes errores, a excepción del sexto que consideramos más adelante, tratan de los méritos de la prueba. Los testigos de la demandante fueron numerosos, de avanzada edad, y muchos de ellos jornaleros y agricultores, quienes por su trabajo o profesión estuvieron en contacto con las partes durante muchos años y, sin embargo, esta prueba en conjunto no sostiene la demanda en cuanto a la alegación de que los bienes acumulados durante las relaciones ilícitas se adquirieron con los trabajos, economías y recur-

sos de la demandante. Algunos de esos testigos, por el contrario, más bien apoyan la contención de la demandada. Luis Ramírez, por ejemplo, de 74 años, agricultor, dice entre otras cosas, que conoció a Avelino Cruz y Toro cuando tenía una tienda a partir con Nestor y Pancho Quiñones y de ahí sacó parte de sus bienes, no viviendo entonces con Carmen Morales; que ésta cuando vivía con su causante se ocupaba en los trabajos domésticos como otras señoras en su casa; que no sabe que Carmen Morales tuviera tienda ni sociedad con Avelino Cruz. "Lo único estar en unión en su casa."

Felipe Ramírez, de 82 años de edad, tenedor de libros, confirma la declaración anterior, diciendo, en resumen: que conoció a Avelino Cruz y Carmen Morales viviendo juntos; que ella hacía los trabajos regulares de una señora; que no sabe que entre ellos existiera un contrato para poner bienes en común y todo su trabajo para repartir las ganancias y que únicamente le consta que entre ellos existía nada más que relaciones de concubinato.

Estas declaraciones que reflejan la verdadera situación de este pleito, están corroboradas en sus extremos esenciales por otros de los demás testigos de la demandante. Mary Quiñones no puede afirmar que Avelino Cruz y Carmen Morales de común acuerdo convinieran poner en común todos sus bienes y trabajo para partir entre ellos las ganancias. Pedro Ramírez, de 66 años de edad, era sabanero de Avelino Cruz antes de éste vivir con Carmen Morales y quien ya tenía su ventorrillo al empezar la vida común con él. Carmen Quiñones dice que Avelino Cruz tenía terrenos antes de vivir con Carmen Morales. Juan B. Capriles no sabe que hubiera sociedad entre ellos y lo único que sabe es que Avelino Cruz y Carmen Morales vivían en concubinato. Manuel Cruz Ramírez, de 65 años de edad, dice que Avelino Cruz tenía una tienda antes de unirse con Carmen Morales; y José Flores, de 35 años de edad, carpintero, veía a Car-

men Morales ocuparse de los quehaceres de su casa y no le constaba que tuviera negocios fuera.

Hubo asimismo manifestaciones en algunos de estos testigos de la demandante y otros más, tendentes a demostrar que ella era el factotum que dirigía la vida interior, así como la exterior de los negocios, en el irregular hogar que habían formado. Para esto se insiste que Avelino Cruz era un analfabeto y nada podía hacer sin la intervención de su concubina. Pero dentro de una condición ilícita, viviendo juntos, unidos ellos como marido y mujer, no era extraño que ella asumiera, sin añadir nada a su pretendido derecho, el papel que generalmente representa una legítima esposa cuidando a su causante, interviniendo ocasionalmente en sus negocios, contando dinero en ciertas operaciones, leyendo cartas, papeles y demás documentos que se otorgaran en relación con los mismos, y así prestara su ayuda o concurso en otros detalles. Estos eran incidentes a la vida común que de un modo permanente mantenían. Aquellas o parecidas circunstancias se sucedieron en el caso de *Harris v. Hobbs et al., supra,* y se consideraron como incidentales a la relación ilícita que sostuvieron sus causantes. Louvenia Harris, a semejanza de Carmen Morales, instituyó un pleito contra los herederos de Hobbs para recobrar la mitad de los bienes personales y reales pertenecientes al último. Ella alegó en forma más suficiente que era dueña de una mitad pro indiviso de los bienes porque habían sido adquiridos por la unión y el trabajo y gastos de la sociedad de ella y de Hobbs. Se reclamaba además cierta propiedad personal que ella alegaba pertenecerle exclusivamente. En el presente caso se desprende de la prueba que Carmen Morales tenía bienes no sólo personales sino raíces por separado y que ella hacía operaciones independientes a las que hacía su concubino. Durante el período en que Hobbs adquirió toda la propiedad, Louvenia Harris vivía con él, le servía de cocinera, ama de llaves, y concubina, y algunas veces trabajaba

en el campo. Ella tenía dos hijos cuando se fué a vivir con Hobbs y él los trataba como suyos y tuvo luego tres hijos con él. (Carmen Morales ya tenía un hijo, de otras relaciones, cuando se unió a su causante.) Louvenia declaró que ella ni sus hijos trabajaron por un salario ni por ninguna porción de las cosechas. La corte finalmente dijo: "El verdadero análisis de la evidencia es que Louvenia Harris era la concubina de Hobbs durante el período en que la propiedad fué adquirida, y los otros oficios y trabajos hechos por ella eran incidentales a esta relación ilícita. Difícilmente puede decirse que esta relación no creara una sociedad o interés común en la propiedad adquirida."

La prueba de la demandada, por otra parte, tendió a establecer claramente que el causante poseía algunos bienes personales y raíces antes de empezar su consorcio ilegal con la demandante; que este estado era preexistente al desarrollo e incremento de los negocios y bienes del causante y que la cooperación y trabajos de la demandante a que alude la demanda, sólo fué incidental a sus funciones de concubina.

[5] Por el sexto y último error que queda por examinar se plantea la proposición que la corte inferior al establecer la conclusión que las partes tuvieron sus bienes separados, contratando con ellos independientemente, debió ser consistente y cometió error al no obligar la devolución del producto de las rentas de las fincas inscritas a nombre de la demandante y del dinero retirado de su cuenta en el banco por Avelino Cruz y su apoderado.

Parece suficiente contestación que el debate no fué planteado en esa forma y la corte inferior para ser congruente tenía que limitarse a conceder o negar, según las circunstancias del pleito, lo que se pedía específicamente en la demanda y no cometió error al no considerar un punto que ni fué alegado ni pedido.

*La sentencia apelada debe confirmarse.*