## MORALES v. VELEZ.

Circuit Court of Appeals, First Circuit.
April 7, 1927.

No. 2042.

1. **Appeal and error ⟞1094(2)—Concurrent findings of district court and Supreme Court of Porto Rico on conflicting evidence will be adopted by Circuit Court of Appeals.**

Where evidence on disputed questions of fact was conflicting, findings of district court, approved by Supreme Court of Porto Rico, will be adopted by Circuit Court of Appeals.

2. **Partnership ⟞20—One living in concubinage with deceased for 40 years held not entitled to property on theory of partnership contract.**

Where plaintiff and deceased lived in concubinage for about 40 years, but had separate properties, with reference to which each contracted independently, plaintiff *held* not entitled to half of deceased's property as against illegitimate, but recognized, daughter, on theory of partnership contract, notwithstanding cooperation and work rendered incidental to relation as concubine.

Anderson, Circuit Judge, dissenting.

Appeal from the Supreme Court of Porto Rico.

Action by Maria Del Carmen Morales against Esperanza Cruz y Velez. The judgment of the district court of Mayaguez, dismissing the complaint, was affirmed by the Supreme Court of Porto Rico, and plaintiff appeals. Affirmed.

O. B. Frazer and Henri Brown, both of San Juan, Porto Rico, for appellant.

Jose Sabater, of Mayaguez, Porto Rico, for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from a judgment of the Supreme Court of Porto Rico in favor of the defendant. The action was brought in the district court of Mayaguez. The record contains two complaints. The second complaint was substituted for the first, and is the one upon which judgment was rendered in the district court and in the Supreme Court. In the first complaint it was alleged that, at the end of the year 1879, the plaintiff, a single woman of legal age, and Avelino Cruz, a bachelor of legal age, entered into partnership, wherein they agreed "to place and placed in common all of the property and labor of both, to share among them by halves the profits that might be obtained," setting out the objects of the partnership and particular duties which the respective parties were to perform thereunder; that the plaintiff contributed 300 pesos in cash, a yoke of oxen, two cows, a heifer and several pieces of furniture; that Avelino contributed six yoke of oxen, a cart, and a horse; that the partnership continued from the end of the year 1879 to the 15th day of November, 1921; that, while the property and rights acquired were placed in the name of Avelino, they belonged to the partners in equal shares; that the property thus acquired consisted of rural and city property, mortgage credits, promissory notes, etc., which are specifically set forth; that Avelino died November 15, 1921, leaving a natural, recognized daughter, the defendant, who had been declared to be the sole and universal heir of Avelino; and that the defendant had taken possession of the property and deprived the plaintiff of the possession, use, and enjoyment of her one-half interest therein. The prayer was that she be declared the owner of a one-half interest in the real properties described, that she be put in' possession of the same, and that she recover from the defendant her share in the rents, profits, etc. The defendant filed an answer which in substance was a general denial.

After the trial had begun and substantially all the evidence introduced, the plaintiff was allowed to file an amended or substituted complaint. In this complaint she alleged:

(1) That "Avelino, known as Lino Cruz y Toro, and the plaintiff lived together and in common in the same dwelling house and home from the year 1880 up to the 15th of November, 1921, when Avelino, known as Lino Cruz y Toro, died"; (2) that "with the means, the work, the co-operation, and the savings of both, during a period of over 40 years, Avelino Cruz y Toro and the plaintiff made a capital composed of property, rights, actions and money" [describing the same property and rights set out in the prior complaint]; (3) that "the property and rights and actions to which the preceding paragraph

refers are in the name of Avelino, known as Lino Cruz y Toro, but the plaintiff alleges that she is the owner of one-half of said property because it was acquired while living in common with Avelino Cruz y Toro, having contributed to acquire the said property with her work, her savings, her co-operation and her means"; (4) that "Avelino, known as Lino Cruz y Toro, died in San German on the 15th day of November, 1921," and the defendant, his natural acknowledged daughter, was declared his sole and universal heir November 18, 1921; (5) that the defendant has seized all the property, rights, etc., left by Avelino at the time of his death, depriving the plaintiff of her right to possess one-half of the property and rights above specifically set forth. The prayer was that the plaintiff be declared the owner of one-half of the property and rights set forth in the complaint, that she be put in the possession of the same, and that she recover the rents, proceeds and profits accruing from said interest.

In the district court it was found: (1) That on or about 1887 the plaintiff started to live in concubinage with Avelino at his home; (2) that at this time Avelino had property consisting of a house, the land surrounding it, sugar cane plantations and an established business for the transportation of merchandise, by means of carts driven by oxen, and other personal property; (3) that on the evidence it declined to find any agreement of partnership or community of property between the parties; (4) that the parties continued living in this relation of concubinage at said house until Avelino died November 15, 1921; (5) that all the property acquired by Avelino was acquired in his name by public instruments and inscribed in the registry of property; that no title, right or interest in favor of the plaintiff appears in said documents; that the plaintiff did not intervene in the business Avelino carried on with his property, or in its management; that the plaintiff and Avelino each had their separate property, and each contracted with reference to his or her property independently of each other; (6) that an implied agreement of partnership or community of property giving the plaintiff a right to one-half of the property left by Avelino will not be indulged as the claim is based on an illicit cause or consideration; (7) that the defendant is the heir of Avelino; (8) and that the plaintiff never during her concubinage claimed any interest in the property of Avelino, or realized any act showing that she had

such interest or that she had co-operated in its acquisition.

Having found that the concubinage relation between the plaintiff and Avelino were the cause and reason of their living together at his home and that the services which she rendered there were incidental to such relation, the district court held that a contract of partnership or community of property would not be deduced from such relation, nor a contract to pay for such incidental services, and dismissed the complaint.

The Supreme Court approved the findings of the court below, and pointed out that according to the allegations of the amended complaint the claimed interest of the plaintiff in one-half the property was made to depend upon the illicit or concubinage relation existing between the parties; that the co-operation and work of the plaintiff referred to in the complaint and disclosed by the evidence were "incidental to her duties as a concubine" or the "common life that in a permanent manner they carried on"; and that the plaintiff "had not only separate personal property but real property and that she carried on operations independent from those carried on by Avelino." It held that neither the allegations of the amended complaint nor the facts found warranted the relief asked, and dismissed the complaints.

[1] The evidence bearing upon the disputed questions of fact being conflicting, and the district judge, who saw the witnesses, being in a better position than this court to judge of their credibility and the weight to be given to their testimony, and the findings of the two lower courts being in accord, we follow the rule prevailing in this circuit and adopt the concurrent findings of those courts as the findings warranted by the evidence.

[2] As according to those findings the plaintiff and Avelino had separate properties with reference to which each contracted independently of the other, and concubinage was the cause and reason of their living together at his house, and the co-operation and work which the plaintiff rendered there were merely incidental to her relation as concubine, we fail to see wherein the Supreme Court erred in dismissing the complaint, for these facts do not support her claim to one-half the property set out in the complaint. It is immaterial whether the complaint states facts sufficient to entitle the plaintiff to relief for the facts found are insufficient to entitle her to the relief she asks.

The judgment of the Supreme Court of

Porto Rico is affirmed, with costs to the appellee.

ANDERSON, Circuit Judge (dissenting). Fully agreeing that only in an extraordinary case is this court warranted in rejecting the concurrent decisions of both Porto Rican courts on a mixed question of local law and fact, examination of the bulky record herein forces me to the conclusion that the decisions below are plainly wrong and ought to be reversed. It is indisputable—practically undisputed—that for about 40 years the plaintiff and the defendant toiled together and accumulated a substantial property, nearly all of which was finally absorbed by the illegitimate, but recognized, daughter of Avelino; Avelino having, in the later period of his life, apparently come under the dominant control of this illegitimate daughter's husband. Conceding that the evidence warranted a finding against the broad allegation of a ganancial partnership, I can find no warrant for holding the plaintiff not entitled to an accounting for her property and work put into the joint enterprise. But the plaintiff's right to this limited relief is denied on the technical and utterly unwarranted ground that it was not adequately prayed for in the complaint. On general principles and under the specific provision of section 191 of the Porto Rican Code of Civil Procedure, this ruling is unsound. That section provides that, where there is an answer, relief consistent with the case made by the complaint and embraced within the issue may be granted. The general issue in this case is plaintiff's right to have from Avelino's estate the value of the property and services she has added to that estate. Cf. Johnson v. Polhemus, 99 Cal. 240, 33 P. 908, construing a similar provision in the California Code. Dennison v. Chapman, 105 Cal. 447, 454, 39 P. 61, is to the same general effect.

The overwhelming weight of the evidence is that the essential relations between the parties were business relations—not illicit sex relations. The plaintiff took her cattle and poultry with her when she—not later than 1887, probably about 1880—began to live in the same house with Avelino, who then seems to have had about the same sort and amount of business assets. Avelino was illiterate—not even able to count money. The clerical and arithmetical details of the business carried on by the two were all performed by the plaintiff. She arose early (about 3 a. m.) and made and sold pies, etc., to workmen; she later conducted a grocery store; she fed pigs and poultry; she did all the things that a reasonably intelligent and hard-working woman would do in a business association or partnership with an illiterate, but apparently energetic and shrewd, male associate. The facts that before they began living together the plaintiff had an illegitimate son by another man, and that later Avelino had one or more illegitimate children by another woman, tend to support the general conclusion that the essence of the relations between these two were business relations, and not grounded on illicit sex relations. Lack of chastity does not invalidate otherwise legal business relations. Their unchaste relations were, on this record, a mere incident of their association for business purposes. Neither party showed any regard for the sex restraints essential to the rights of children and the integrity of the family as a moral and social unit; but the plaintiff should not, on that ground, be deprived of the fruits of a long life of arduous and in the main menial toil, for the benefit of the illegitimate child of her business associate. Rights accruing out of labor and property embarked in a joint venture are not destroyed by the existence of unchaste sex relations between the joint venturers.

The case falls plainly under the doctrine laid down in the note to the case of Mitchell v. Fish, 36 L. R. A. (N. S.) 838: "The cases support the rule that an agreement to carry on business or accumulate property is valid and enforceable, although the parties were maintaining illicit sexual relations with each other during the period covered by the contract, unless the contract was made in contemplation of such illicit relationship, as where it formed a part of the consideration." The same principle is stated in Delamour v. Roger, 7 La. Ann. 152, as follows: "There is a manifest difference between an action for the wages or reward promised in consideration of concubinage, which can not be maintained, and a suit for property, the result of capital, industry, labor and economy."

To the same general effect is Malady v. Malady, 25 La. Ann. 448; Viens v. Brickle, 8 Mart. (O. S.) (La.) 11; Emmerson v. Botkin, 26 Okl. 218, 109 P. 531, 29 L. R. A. (N. S.) 787; Pereuilhet's Succession, 23 La. Ann. 294, Am. Rep. 595; Simpson v. Normond, 51 La. Ann. 1355, 26 So. 266.

The authorities cited in the opinion of the Supreme Court of Porto Rico lead, in my view, to a result the reverse of that reached by that learned court. Indeed, I think the opinion of that court may be fairly characterized as a series of non sequiturs. And

the conduct of the trial in the district court was not of a character to command confidence and approval. The rulings there made against the plaintiff cannot be reconciled with Rev. St. Porto Rico, § 1403, making admissible the acts and declarations of "a deceased person done or made against his interest in respect to his property." Cf. General Laws of Massachusetts, c. 233, §§ 65 and 66.

Perhaps one other point deserves mention: After Avelino's death, two tracts of land standing in the name of and on this record belonging to the plaintiff, were transferred by Avelino's son-in-law, apparently acting for the succession, to a third party, by a deed signed by this son-in-law and containing the groundless statement that this signature was attached at the request of the plaintiff and because she was unable to sign. On this record I can see no reason whatever for denying the plaintiff a remedy for the wrong. But this is simply one of the more glaring indications of general disregard of this plaintiff's rights.

I think the case should be remanded for a trial de novo, for the value of the property and the services contributed by the plaintiff to Avelino's estate.