GUARANTY TRUST COMPANY OF NEW YORK, Individually and as Successor Trustee under a Certain Deed of Trust Made by KATHERINE E. BRUNTON, Dated the 1st Day of September, 1927, Plaintiff, *v.* THE INTERNATIONAL TRUST COMPANY, as Executor of the Estates of KATHERINE K. BRUNTON and DAVID W. BRUNTON, Deceased, and as Administrator of the Estate of FREDERIC K. BRUNTON, Deceased, and Others, Defendants.

Supreme Court, New York County, June 28, 1932.

*Kieffer & Woodward* [*William J. Killea* of counsel], for the Guaranty Trust Company.

*Duer & Taylor* [*George W. Taylor* and *Lawrence Lewis* of counsel], for the defendants LeRoy McWhinney and others.

*Leland B. Duer,* in person, as guardian *ad litem,* for the defendants Frederic K. Brunton, Jr., and others.

*Joseph Kahn,* in person, as guardian *ad litem,* for the defendants Dickinson Barker and others.

*Walter S. Gedney,* for the defendant Barbara Ann Brunton.

*Maginnis & Maginnis* [*S. Abbot Maginnis* of counsel], for the defendant Mildred Meeker Brunton.

*Benjamin S. Kirsh,* for the defendant Frank Bryson.

COTILLO, J. This is a proceeding by the Guaranty Trust Company, as successor trustee under a certain deed of trust, seeking the judicial settlement of its account. The trust was created by Katherine K. Brunton, of Denver, Colo., on September 1, 1927, the trustee being the National Bank of Commerce of New York city, which thereafter merged with the present trustee. The trust instrument contemplates that there shall be eight separate trusts, which for convenience the trustee may conduct in one fund. During the lifetime of the trust, as measured by the trust agreement, the income from all eight parts was to be paid to the husband of Katherine K. Brunton, that is, David William Brunton. Upon his death one-half of the income was to be paid to the donor and the residue or remainder of the income, including after the donor's death that part which he would receive while alive, was to be paid to the other beneficiaries of the several eight parts as follows:

" Part One " and " Part Two " of the trust deed at the present time are before this court, together with the other parts, in an action brought by the trust company to settle its intermediate account, and are the only parts of the fund concerning which a controversy has arisen between parties who are or claim to be beneficiaries of the income thereof. " Part One " of the trust fund is measured by the life of Frederic K. Brunton, son of the donor, and his son, Frederic K. Brunton, Jr., or the survivor of them. " Part Two " is similar to " Part One," except that it continues so long as Frederic K. Brunton and his daughter, Virginia Brunton, or the survivor of them, live.

The trust agreement further provided that during the lifetime of David William Brunton, the husband of the donor, the trustee

should pay all the income of each of the trust funds to him, and upon his death and while the donor lived, one-half of the net income of each of the separate funds, as to which this trust was not terminated, was to be distributed as follows:

" *First.* The net income from ' Part One ' of the trust estate shall be paid to the said Frederic K. Brunton during his lifetime, but if he is not living and if living then upon his subsequent death, the said net income shall be paid as follows: One-half thereof unto his widow during her lifetime and all the remaining income (including his widow's share in the event he is not survived by a widow or in the event he is survived by a widow, her rights of income should be terminated under the provisions of section VII of the trust agreement) unto the said Frederic K. Brunton, Jr.

" *Second.* The net income from ' Part Two ' of the trust estate shall be paid to the said Frederic K. Brunton during his lifetime but if he is not living and if living then upon his subsequent death said net income shall be paid as follows: One-half thereof unto his widow during her lifetime and all the remaining income (including his widow's share of the income in the event he is not survived by a widow or in the event he is survived by a widow her rights to income should be terminated under the provisions of Section VII of the trust agreement) unto Virginia Brunton."

In both of these trusts provision was made at their termination for the payment of the respective principals to the issue of Frederic K. Brunton, Jr., and Virginia Brunton. As to the other six parts analogous provisions were made respectively for the benefit of three other children of the donor and/or their issue.

No question has arisen as to the accuracy of the accounting by the plaintiff, and no objections were filed to it either by the adults or the guardians *ad litem* representing the infants in this litigation. In fact the guardians have expressed themselves in a very complimentary way regarding the good judgment exercised by the plaintiff trust company in liquidating the common and preferred stocks which came to it from the donor and which constituted more than two-thirds of the estate. Practically all these stocks were sold, in many instances at the peak of the market before the stock market debacle of 1929.

An issue arises, however, solely as to trusts 1 and 2, which does not affect the accuracy of the accounting, but presents to the court the rights of two claimants, other than Frederic and Virginia Brunton, to income of those trusts, both of whom claim as widows of the father of the two children. The determination involves the application of section VII of the trust agreement, which reads as

follows: " Wherever herein provision is made for the payment of income to a widow of a son of the donor, such provision shall be and hereby is made, subject to the following condition, to wit: That at the time of the death of the donor's son of whom she is the widow, she shall have been lawfully married to, and living with, said son as his wife; and the provisions hereinabove for the payment of income to the husband of the donor's daughter, Marion Brunton Barker, after the death of the donor's daughter shall be, and hereby is, made subject to the following condition, to wit: That at the time of the death of the donor's said daughter her husband shall have been lawfully married to, and living with, the donor's said daughter."

On November 6, 1909, Frederic K. Brunton married his first wife, Edith. On June 29, 1925, she divorced Frederic K. Brunton. The issue of this marriage consisted of a son, Frederic K. Brunton, Jr., and a daughter, Virginia, the respective beneficiaries mentioned in trusts 1 and 2.

On August 5, 1925, the defendant married the wife known as " Barbara " at Monterey, Nuevo Leon, Mexico. Prior to this marriage she had had several matrimonial adventures, some of them of an unsavory character. Barbara and Frederic K. Brunton lived together in Tucson, Ariz., and elsewhere until on or about September 24, 1928, when he left Barbara in Tucson in the house which belonged to him and went to California. Barbara and Frederic never saw each other again. In California, Frederic met Mildred, who claims to be the widow as against the claim of Barbara. In April, 1930, a divorce was obtained at Ensenada, Mexico, by Frederic K. Brunton, and on May 31, 1929, Brunton and the third wife, referred to herein as " Mildred," went through a marriage ceremony at Tia Juana, Mexico. Like Barbara, Mildred had had several matrimonial entanglements before the attempted marriage with Brunton.

There is now before this court the following question to be determined: Whether or not either Barbara or Mildred or neither of them complied with the two conditions set forth in the trust agreement, namely, lawful marriage to Frederic K. Brunton, and living with him at the time of his decease. There seems to be no doubt that Barbara was lawfully married to him, but there is a grave doubt as to whether or not she was living with him as his wife at the time of his death. There is no doubt that Mildred was living with him at the time of his death but there is serious doubt as to whether or not she was lawfully married to him or living with him as his wife. Brunton in his two matrimonial escapades after his first marriage lived with the woman who afterwards became his

wife for some time prior to any marriage ceremony, and during the episode with Mildred he had evidently deserted Barbara, leaving her at Tucson, Ariz., where they then lived in the home owned by Frederic and Barbara. After living with her at Tucson, he proceeded to California, where he and Mildred met and lived together from October, 1928, until the attempted marriage ceremony in Mexico on May 31, 1929.

The rival claims of the two alleged widows are in direct contravention of the rights of the two children of Frederic, that is, Frederic, Jr., and Virginia, and accordingly their representatives take the position that neither one of the two qualified under the conditions imposed by section VII. They litigated this very issue in Denver, in connection with a trust agreement substantially identical with the present one, the plaintiff, however, being a bank in Denver. The latter, as trustee, brought an action for the settlement of its judicial account, and both Barbara and Mildred appeared as defendants, by virtue of their rival claims to half of the income under Denver trusts 1 and 2, in which the interests of the children, Frederic and Virginia, were defined in a manner identical with those in the present litigation. As in the present case, the trustee of the Denver trust, like the plaintiff here, refused to pay the children of Frederic K. Brunton, deceased, all of such income until the court had decided the conflicting claims to the income here in question. As in the case at bar, the trustee in the Denver case appeared and stated that its position was in effect merely that of a stakeholder. The defendants Barbara and Mildred each appeared and filed separate answers, each asserting that at the time of the death of said Frederic K. Brunton she was lawfully married and living with Frederic K. Brunton as his wife.

The pertinent provisions of the Denver trust are set forth in subdivision VII of that trust, and are identical with the language of the similarly numbered subdivision VII of the New York trust and read as follows:

" From and after the death of said Frederic K. Brunton, the income to which he would have been entitled, if living, shall be paid as follows: One-half (1/2) unto his widow during her lifetime, and all of the remaining income   *   *   *   unto his lawful issue, *per stirpes* and not *per capita*." (Paragraph 5 (b) of subdivision V of the Denver trust, subdivision " ninth " of the complaint in Denver case, Denver judgment roll.)

" Wherever herein provision is made for the payment of income to a widow of a son of the donor, such provision shall be, and hereby is made subject to the following condition, to wit: That at the time of the death of the donor's son of whom she is the widow, she shall

have been lawfully married to, and living with, said son as his wife * * *." (Subdivision VII, Denver trust; subdivision "tenth" of complaint in Denver case, Denver judgment roll.)

The District Court of Denver, Colo., a court of highest original jurisdiction, after extensive testimony presented by the parties, ruled that Barbara had no claim under section VII because she was not living with Frederic Brunton at the time of his decease. It also ruled that Mildred was not entitled to share in trusts 1 and 2 because while living with Frederic she was not lawfully married to him.

After the rendition of judgment by the Colorado court no appeal was taken and the time to appeal has expired. At the trial a motion was made to dismiss the claims of Barbara and Mildred on the basis of the Colorado judgment. I reserved decision on this and permitted the introduction of testimony on the merits. Now that all the facts are presented to permit a full comparison of the identity of the issues in the present action with those in the Colorado suit, the question arises whether this final decree of a court of general and unlimited jurisdiction entered in a case in which both Barbara and Mildred and the children were necessary parties is entitled to full faith and credit under the Constitution of the United States in the courts of this State.

Estoppel by judgment, or what is commonly known as "*res adjudicata*," has two distinct branches, the first where two suits are upon the same cause of action between the same parties. In that situation judgment in the first will be an absolute bar to the second. The other type is where the suits or proceedings are upon different causes of action, but common material issues are involved. In that type the determination of any material issue or the finding of any essential fact between the contesting parties in the first case will, as to those parties, be conclusive as to that issue or that fact in the second case. (*Cromwell* v. *County of Sac*, 94 U. S. 351.) Both the defendant Barbara and the defendant Mildred set up the contention that the controversy in this court is between themselves and the Guaranty Trust Company as plaintiff, while in the Colorado case a different plaintiff and another trust agreement are involved. But in the Colorado case the fundamental question involved was the status of the children and of the two alleged widows, and the judgment rendered necessarily had to proceed upon a finding that neither of the widows complied with both conditions of the trust — lawful marriage to, and living with, Frederic K. Brunton at the time of his death. That finding was based upon the same evidence as before this court, and that judgment is, therefore, conclusive upon the question. (*U. S. Trust*

*Co.* v. *Hoyt,* 115 Misc. 663; affd., without opinion, 173 App. Div. 930; affd., 223 N. Y. 616.) The fact that the Denver trust involved different securities and a different trustee is not material, and the determination of the Denver courts must, therefore, be accepted as conclusive.

While this decision is on technical legal grounds, I believe from an independent reading of the testimony that it is sound. As to Barbara, the testimony that the deceased was not living with her at the time of his death, within the intent of the donor, is overwhelming. As to Mildred, her status as not having been lawfully married to Frederic K. Brunton was established by the Colorado courts. It was further established by the courts of California in denying Mildred's status as widow when refusing to grant her letters of administration. While the latter determination has been appealed, and under the laws of California cannot be regarded as *res adjudicata,* it is nevertheless highly persuasive. In two courts in which Mildred has had full opportunity to present her claim, her status as a lawful widow has been denied. In these circumstances it does not lie in her mouth to complain that she has been denied justice, particularly as the reading of the testimony of her claim sustains, in my mind, the propriety of the result in her case.

The remaining question involved is what disposition should be made of the income which had accrued at the time of the death of Frederic K. Brunton. To the extent to which such income was actually collected and either paid or payable to the trust company, it should, in the opinion of the court, be paid to the public administrator of the State of California, who has been appointed to carry out the terms of the last will and testament of Frederic K. Brunton.

The attorneys for Barbara and Mildred, the unsuccessful contestants, ask that they be given allowances out of the trusts for shares in which they unsuccessfully laid claim. They base their contention upon sections 1512 and 1513 of the Civil Practice Act. While I agree that the case is an extraordinary and difficult one and there is an arithmetical base upon which the five per cent referred to in the statute can be computed, nevertheless they are the unsuccessful parties, and an allowance may not be granted to them. There may be cases, such as partition actions, where allowances may be made to both sides, but this is not a case of such a nature. In view of the opposition of the other parties and the ruling in *Matter of Howell* (215 N. Y. 466, 470, 471), these applications for allowances must be denied.

As to the various motions to strike out, as to which decision has been reserved, I have decided to deny them all. While my decision

134

in the first instance is based upon the principle of *res adjudicata,* I have supported it by the evidence in the entire case.

Proposed findings of fact and conclusions of law passed upon. Let plaintiff submit consolidated findings embodying such as were approved among those submitted by the other parties and not already contained in substance in its proposed findings. Submit such findings, as well as judgment, upon notice.