In the Matter of FIFTH MADISON CORPORATION, Respondent. ARTHUR MURRAY, INC., Appellant.

ARTHUR MURRAY, INC., Appellant, *v.* FIFTH MADISON CORPORATION, Respondent.

First Department, April 16, 1957.

*Mendel Lurie* of counsel (*Bernard H. Goldstein* and *Lawrence A. Cohen* with him on the brief; *Mendel Lurie*, attorney), for appellant.

*Eugene Blanc, Jr.*, of counsel (*Dorothy S. McCrea* with him on the brief; *Delafield, Marsh & Hope*, attorneys), for respondent.

RABIN, J. This is an appeal from a final order granting an increase in rent for the space occupied by appellant Arthur Murray, Inc., in the respondent's office building located at 342 Madison Avenue, in the city of New York. In a prior proceeding tried about a year and a half earlier the same tenant's rent had been increased by 44½%. The tenant occupies 5 separate areas — a so-called wing on the third floor, an inside and an outside wing on the fourth floor, rooms 307 to 309 on the third floor and rooms 409 to 415 on the fourth floor. The lower court's order increased the rental for the entire space from $32,510 to $51,919.30, or approximately 60%.

The present proceeding was instituted in October, 1953. The prior proceeding, which was tried before a Special Referee, was decided on May 9, 1952. The Referee in that proceeding based his findings on an allowable return to the landlord of $1,165,805.24. In the present proceeding the allowable return was fixed by stipulation at $1,292,256. In other words it is conceded that on the entire building the landlord is entitled to

an additional return of 10.8%. Contrasting this figure with the 60% increase granted by the lower court it is apparent that the court found that in the period intervening between the two trials, there was a great increase in the relative value of the tenant's space, as compared to the remaining space in the building.

The tenant urges that the relative values determined by the Special Referee are binding in this proceeding unless it can be shown that there has been some change in circumstances which would alter them. We agree with that premise, for in the absence of such proof, the finding of relative values made at the prior trial, being an essential element in the case, is binding on that issue at a later trial (*Guaranty Trust Co.* v. *International Trust Co.*, 144 Misc. 127, 132; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Schuylkill Fuel Corp.* v. *Nieberg Realty Co.*, 250 N. Y. 304, 306–307). We recognize, of course, in view of the conceded change in the allowable return, that the rental value in dollars found in the prior proceeding is not *res judicata* in this proceeding. But the same does not hold true as to relative values, which should remain the same unless there has been some change, resulting from a different physical set-up in the building, an increase in special services to the tenant or some other factor affecting relative values.

At the prior trial the Special Referee found that the relative value of the tenant's space was 2.49% of the total value of the space in the building. He based this finding on the testimony of Mr. Potter, the landlord's expert. In the present proceeding a different expert for the landlord places a total relative value on tenant's space of 4.73%. The tenant's expert estimates the relative value at 2.36%. While the lower court's opinion does not indicate what percentages of value it found, nevertheless, based on the square foot dollar values set forth in the opinion it appears that the court charged tenant's space with 4.015%. The court thus found a relative value for the tenant's space about 60% higher than that found by the Special Referee.

The record however fails to establish any change of circumstances to justify this increase. There were some changes in space layouts, in some instances consisting of a merger of units and in other instances a split-up of space, creating extra units. An analysis of these changes shows that they just about cancel out. In any event we find that they were inconsequential and in no way affected the tenant's space. As a matter of fact according to figures submitted by the landlord's expert at the present trial the net result was to slightly increase the total

relative value of the spaces changed, over that found for the same spaces at the prior trial. It follows therefore that the only effect these changes could have on the relative value of tenant's space, if any, would be to decrease rather than increase it.

Nor was there any proof at the second trial that the services furnished to this tenant had changed or increased or that there was any other factor affecting relative values. We reach the conclusion therefore that there was no change of circumstances which would justify a change in the previously adjudicated relative value of 2.49%.

It is claimed by the landlord that its expert at the first trial made a mistake in his appraisal of the relative value of the tenant's space, in that among other things, he failed to include all the special services rendered. However a mistake in testimony on an issue once tried is no basis for reopening and retrying that same issue, with different testimony, at a later trial. Moreover it would appear that there was in fact no mistake at the first trial, because the same expert, Mr. Potter, in a deposition on the present trial states that he took into consideration all services rendered to the tenant. It may also be noted that if, as the landlord claims, too small a relative value was given to tenant's space, then the landlord received and presumably is still receiving more than it is entitled to from the space occupied by the other tenants in the building.

Quite apart from any of the foregoing considerations it would seem that on the evidence the lower court placed too high a relative value on the tenant's space. If this court were to make a finding in this respect, we would — based upon an evaluation of all the testimony — fix it at no greater than 2.49%, the value found by the Special Referee, particularly in view of the evidence of the landlord's expert that changes in units other than the tenants, resulted in an increase in the total relative value of those units.

At the trial herein the tenant urged that the proceeding insofar as it concerns the third and fourth floor wings was prematurely instituted and should have been dismissed. The trial court in refusing to dismiss held that even though the proceeding was premature as to these units, that fact was immaterial, since at the time the case was tried a proceeding could have been properly commenced. We are impelled to disagree with that view because of the statutory requirements that the landlord must declare income and expenses for the one-year period immediately preceding the date of the application,

and that any increase granted is effective as of the date of the application. Obviously if the proceeding were brought prematurely, two different income and expense periods would be involved, one covering the one-year period prior to the date the proceeding was commenced, as called for by statute, and the other, the one-year period preceding the date on which the proceeding could have been timely brought. A similar difficulty would arise with respect to the effective date of increase. Therefore, if we are to follow the statute we cannot adopt the reasoning of the court below.

We believe however the refusal to dismiss was correct, first because any objection there might be, based upon a conflict in the income and expense periods, is overcome by the fact that the parties stipulated as to the allowable return to the landlord based upon income and expenses; and secondly for the more basic reason that the proceeding was in fact not premature. The 44½% increase allowed at the prior trial before the Special Referee was to be paid over a period of three years as follows:

| | |
|---|---|
| May 27, 1951 to June 30, 1952............... | 15% |
| July 1, 1952 to June 30, 1953............... | 15% |
| July 1, 1953 to June 30, 1954............... | 14½% |

While under the statute the landlord is limited to a 15% increase for any one year, by the same token it would be entitled to collect a full 15% for each year, if such increase were found by a court to be justified. Consequently for the period of July 1, 1953 to June 30, 1954 — only 14½% having been allowed the landlord — it had the right to institute a proceeding to obtain an additional ½%. It would follow that this proceeding, commenced in October, 1953 was not premature.

Accordingly in the present case no difficulty arises with respect to the effective date of the increase. The law is that the effective date is the date of the application which in this case would be October 1, 1953. The landlord having already received 14½% for the period July 1, 1953 to June 30, 1954, could obtain for that period no more than an additional ½%.

We agree with the remaining dispositions made at the trial with respect to tenant's claims against the landlord, which were consolidated with the main proceeding at the request of the tenant. The tenant seeks in the first and second causes of action to recover alleged rent overcharges and predicates its claim on the theory that the three wing spaces occupied by the tenant constituted separate rental units. However in the original

lease and in the prior proceeding these spaces were considered as one rental unit. The decision treated them as one unit even though it became necessary to fix different values for the several spaces. Even the tenant so considered it, as is evidenced by the rent being paid by it as one unit. The first and second causes of action were therefore properly dismissed.

The third and fourth cause of action respectively, sought damages for failure to furnish adequate heat and porter and cleaning services. In addition, on April 22, 1955, and after the complaint had been served upon the landlord, the tenant made application to amend its complaint so as to add still another cause of action alleging abuse of process. This application was granted but no formal amended complaint was ever served. Upon the trial herein the tenant sought leave to discontinue the third and fourth causes of action without prejudice. The court granted leave to discontinue but upon condition that these causes of action be not renewed and upon the further condition that no action based upon alleged abuse of process should ever be brought against the landlord.

In imposing these conditions we think the court acted correctly and within its sound discretion because the matters involved in the third and fourth causes of action were related to the main issue, being factors in determining the amount of rent to be fixed. The proposed fifth cause of action for abuse of process had its origin in and was related to the tenancy. Consequently, and considering the fact that it was the tenant who had all its claims, including this one, consolidated with the main rent proceeding, it cannot be said that the court abused its discretion in permitting a discontinuance upon the terms imposed.

The final order should be modified so as to limit the increase in tenant's rent to 2.49% of the conceded allowable return.

The final order appealed from should be modified as indicated, and as so modified, affirmed, with $20 costs and disbursements to appellant. Settle order.

PECK, P. J., FRANK, McNALLY and BERGAN, JJ., concur.

Order unanimously modified in accordance with the opinion herein and, as so modified, affirmed, with $20 costs and disbursements to the appellant. Settle order on notice.