The decree is affirmed and appeal dismissed at the cost of the appellant.

## Appeal of Forcey and Mitchell, Executors.

1. A., the owner of coal lands, leased the same for a royalty of ten cents a ton on all coal mined. In his will, after reciting said lease of coal lands, A. provided as follows: " I direct that after my death my executors shall take charge of the same and from the proceeds thereof first give to my wife, Lydia Gearhart, aforesaid, an ample and sufficient support while she may survive my death, and then they shall divide the remainder equally among my children, share and share alike." The lease was afterwards conveyed to B. and then to C. The widow and certain of the heirs by separate deeds also conveyed their respective shares of the royalties to C. All of C.'s interests, both in the lease and the royalties, were afterwards acquired by D. The trustee under A.'s will filed a bill in equity against B. C. and D. to compel a discovery of the amount of coal mined by them, and an account for the royalties due. The respondents filed an answer denying liability to account, on the ground that the right to receive the royalties was vested in C. The Master to whom the cause was referred, reported that under the will there was a continuing trust both for the widow and children, and that the conveyances of the widow and heirs were therefore void. Exceptions to this report were dismissed and a decree entered that the trustee collect the moneys accrued under the lease, and, after first providing for the support of the widow, that he retain the balance subject to the further order of the court. The royalties accruing from D. were accordingly paid to the trustee. Subsequently the widow died, and an auditor was appointed to distribute the balance remaining in the trustee's hands; the same being claimed by A.'s heirs, and by D.'s executors under the deeds to C.

*Held,* that under the provisions of A.'s will the trust only continued

until the widow's death; that the conveyances to C. by the heirs, of their contingent interests were valid, and that D. was entitled to those shares of the fund which would have been due to said heirs, if they had not so conveyed.

*Held further*, that the report of the Master in pursuance of the bill in equity, and the final decree thereon, were not a bar to D.'s claim before the auditor for the shares conveyed to C. by the heirs; because, in the proceedings before the Master the validity of the deeds by the heirs was not the object of the issue, and whether valid or not, the right of the trustee to recover, by reason of the invalidity of the widow's deed, was the same.

2. A judgment of a court of concurrent or exclusive jurisdiction is not evidence of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment.

May 5, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ. GREEN, J., absent.

APPEAL from the Orphans' Court of *Clearfield county:* Of July Term, 1884, No. 3.

Appeal of Thomas H. Forcey and Robert Mitchell, executors of James T. Leonard, deceased, from a decree of said court making distribution of the fund in the hands of Levi Goss, trustee of the estate of John Gearhart, deceased.

John Gearhart, who was the owner of a certain tract of coal lands in Clearfield county, leased the same, on February 8, 1865, to Daniel Williams, the consideration being ten cents a ton on all coal mined, and the lessee agreeing to render an account therefor every three months. On February 14, 1871, Gearhart died, leaving to survive him his widow, Lydia Gearhart, five sons, David, John S., Andrew, Enoch G. and Jacob B. Gearhart, and five daughters, Sarah, wife of David Goss, Catharine, wife of Abraham Goss, Susan, wife of Joseph Millward, Jane, wife of Jonas Peters, and Hannah M., wife of Jacob Haberacker. By his will the decedent provided, inter alia, as follows: " Whereas, I have leased the coal mine on a portion of my lands, by an agreement with Daniel Williams and his assigns, dated the 8th day of February, 1865; now I direct that after my death my executors shall take charge of the same, and from the proceeds thereof, first give my wife, Lydia Gearhart, aforesaid, an ample and sufficient support while she may survive my death, then they shall divide the remainder among my children, share and share alike."

After the filing of the executor's account, William Riddles was appointed administrator d. b. n. c. t. a., and trustee to carry into execution the above trust.

By various conveyances, a one third interest in the lease to Daniel Williams became vested in George E. Parker on April 14, 1873. Subsequently, on May 7, 1873, Edward Perks acquired title to the entire lease.

On the latter day Lydia Gearhart, the widow, David Gearhart, one of the sons, Hannah Haberacker, Susan Millward, Catherine Goss, and their husbands, heirs of John Gearhart, deceased, sold their interests, under the will, in the royalties accruing under said lease, and executed deeds for the same to the said Edward Perks and one J. N. Casanova. The consideration to the widow was $600, and to each of the heirs $250.

On March 23, 1876, one James T. Leonard, by sheriff's deed, acquired title to all of Edward Perk's interest in the lease of coal lands, and in the royalties as above set out.

William Riddles, trustee, filed a bill on June 28, 1876, against Edward Perks, George E. Parker and James T. Leonard to discover the amount of coal taken out by them, and to compel them to account for the royalties due thereon. In their answer, the respondents denied their liability to account for said royalties on the ground that the right to receive the same had been vested in Edward Perks by the deeds to him. Upon this issue a Master was appointed to take testimony, and before him the respondents produced the said deeds from the widow and heirs to Perks and Casanova for their respective shares of royalties.

By his report, which was filed September 28, 1878, the Master found that the trust created in the will " vested the property in the executors; and the widow and heirs had no title which they could convey, but only a beneficial interest which could be enforced in equity." He accordingly decided that the widow and heirs of John Gearhart, deceased, were entitled to the royalties under the lease, and that Edward Perks did not acquire any title to the same under his deeds from said widow and heirs. But he allowed Perks a credit for the amount paid by him for said deeds. Exceptions filed to this report were dismissed by the court, and a decree entered, July 23, 1880, that the respondents should pay to William Riddles, as accrued royalties, the following sums: Perks and Parker, $1,082; Parker and Leonard, $948.20; and Leonard, 98.30-- with interest on each sum. The decree further ordered Leonard to render an account to Riddles, as trustee, for all the coal mined from said tract since May 11, 1877, and to continue to account therefor every three months thereafter. This Leonard failed to do, and the matter was again referred to the same Master to determine the sum due by Leonard for royalties since May 11, 1877. The Master filed his supplemental report on June 2, 1881, in which he found said sum to be $2,786.55. Exceptions filed to this report by Leonard were dismissed by the court, and the following decree entered, Levi Goss having meantime succeeded

Riddles as trustee: " And now, 26th October, A. D. 1881, it is ordered and decreed that the trustee, Levi Goss, collect the moneys arising under the lease mentioned in the will of John Gearhart, deceased, and after first providing for support of Lydia Gearhart, according to the will of John Gearhart, deceased, retain the balance in his hands, subject to the further order of the court, in that behalf to be made hereafter."

In pursuance of this decree Leonard paid his share of royalties to the trustee. The other respondents were insolvent.

On January 9, 1882, Lydia Gearhart, the widow, died. Levi Goss afterwards filed his account as trustee, which was approved by the court, and Oscar Mitchell, Esquire, was appointed auditor to distribute the balance appearing by said account. Leonard having died, his executors claimed before the auditor, that his estate was entitled, by virtue of the deeds from Hannah Haberacker, Catherine Goss, Susan Millward and David Gearhart to their respective shares of the fund on the ground that under John Gearhart's will the trust was only to continue until the widow's death, and that the conveyances by the heirs of their contingent shares of the royalties were therefore valid. The auditor reported, inter alia, as follows :

" The conclusion of law reached by the Master was that ' the trust vested the property in the executors, and the widow and heirs had no title which they could convey, but only a beneficial interest, which could be enforced in equity.' The Master, after finding that the sale of the royalty, made by the widow and heirs, was illegal, allowed Perks a credit of the amount of the purchase money paid for same on the royalty due from him to said widow and heirs. The Master, in short, decided that the widow and heirs of John Gearhart, deceased, were entitled to receive the royalty on said coal lease, and that Edmund Perks did not acquire the title to said royalty by any purchase he may have made from said heirs and widow. So it follows that, since James T. Leonard's estate owns nothing but Perks' interest in said lease and royalty, Leonard's executors cannot be entitled to receive the money now for distribution, for this is money arising from the same royalty, the parties are the same in interest, and stand in the same position as when they contested their right to this royalty by said bill in equity. . . . . . Your auditor is of the opinion that the rights of these parties were fixed and finally determined by said bill in equity, and that by the finding of the Master, and under the decree of the court, the heirs of John Gearhart, deceased, have the right to receive the money now for distribution.

" Your auditor therefore finds that the court has decided

the title to said royalty is in the Gearhart heirs, and he makes his·distribution accordingly."

Exceptions filed ·to this report by Thomas H. Forcey and Robert Mitchell, Leonard's executors, were dismissed by the court, MAYER, P. J., presiding, and a decree entered confirming the same absolutely; whereupon the exceptants took this appeal, assigning for error the decree of the court.

*S. V. Wilson*, for the appellants.—The decree of the court in the bill in equity filed by Riddles, trustee, against Perks, Parker and Leonard, is not a bar to Leonard's present claim for the shares which the heirs conveyed to Perks.  The judgment of a court of concurrent jurisdiction is not evidence of any matter *incidentally* cognizable, nor of any matter to be inferred by argument from the judgment: 20 Howell's St. Tr., 538; Lentz *v.* Wallace, 17 Pa. St., 412; Lewis and Nelson's Appeal, 67 Pa. St., 153; Hibshman *v.* Dulleban, 4 Watts, 183.  The question involved in the present proceeding was only incidentally before the court in the former one.  There the rights of the heirs could only be passed upon incidentally. .The precise point was the liability of the respondents for coal taken, and the relief prayed was for the benefit of the widow. The question of the right of the heirs to convey, and whether the trust extended to them, was not at issue.  We do not contend here that the widow's share should, when she was alive, come to us, but we maintain that the shares of the heirs are ·legally ours, and that, on the distribution arising out of the original transaction we have a right to be heard, and are not estopped by the Master's report.  The heirs of John Gearhart, deceased, had a right to assign their contingent estates to Perks: Phila. W. & B. R. R. Co. *v.* Woelpper, 64 Pa. St., 366; 2 Story's Eq., 1040.  The decree under the bill in equity contemplates a distribution "hereafter," and no mention is .made of the heirs; nor does the court pass upon their right to convey their contingent interests.  It follows that this court ·is not concluded by said decree from reviewing the whole proceeding upon its merits, and awarding to Leonard's executors the money distributed to those heirs who conveyed to Perks: Finney's Appeal, ·1 Wr., 323; Hallowell's Appeal, 8 Harris, 215; Chandler's Appeal, 100 Pa. St., 262.

*Frank Fielding* (with whom was *W. D. Bigler*) for the appellees.—The appellants are concluded by the proceedings ·and decree in the equity suit.  The Master found that the trust vested the property in the executors and that the widow and heirs had no title which they could convey, but only a beneficial interest which could be enforced in equity.  The

attempted sale by the beneficiaries and the consequent destruction of the trust, were all declared a nullity. The question was distinctly raised and decided by final decree, and the records show that Leonard paid the trustee for coal mined, in pursuance of said decree. The trustee in said proceeding stood in the place of the heirs. A judgment concludes not merely as to the point decided, but as to a matter which it was necessary to decide, and which was actually decided as the groundwork of the decision itself, though not then directly the point at issue: Reg. v. Hartington M. Q., 4 El. & Bl., 780; 1 Jur., N. S., 586; 24 L. J., M. C., 98; 3 C. L. R., 554. The fair and reasonable construction of the will is, that the trust was created for both widow and children. It does not say that the children shall receive nothing until the death of the widow, but they are to receive the surplus after her reasonable support is deducted. The trust is an active one, which continues until the coal mentioned in the Williams lease is mined out. The Master was therefore clearly right in deciding that the heirs could not convey their shares: Barnett's Appeal, 10 Wr., 392; Ogden's Appeal, 20 P. F. S., 507; Earp's Appeal, 25 P. F. S., 125; Delbert's Appeal, 2 Norris, 462.

Mr. Justice TRUNKEY delivered the opinion of the court, October 6, 1884.

The controlling question is whether the validity of the respective deeds by David Gearhart, Hannah Haberacker, Catharine Goss and Susan Millward to Perks and Cassanova was directly involved in the action in equity by Riddles, administrator of John Gearhart, deceased, against Perks, Parker and Leonard. The bill was filed by the trustee, acting under the will of said deceased, for an account of the royalty of ten cents a ton for all coal mined by the respondents on a particular leasehold. Neither bill nor answer mentioned the deeds, but the respondents denied the complainant's right to recover said royalty, and averred the same was vested in themselves. The decree required Perks and Parker to pay to the complainant $1,082, Parker and Leonard to pay $948.20, and Leonard to pay $90.31; also that Leonard should render an account for all coal mined since May 11, 1877, and pay the royalty on the same to date of the decree, and thereafter account and pay in like manner. Subsequently, a reference was made to the Master to state an account of the coal mined since May 11, 1877, and the value thereof, which he did. Following this report the only decree of record is dated October 26, 1881, which directs the trustee " to collect the moneys arising under the lease mentioned in the will of John Gearhart, deceased,

10 OUTERBRIDGE.—33

and after first providing for support of Lydia Gearhart, according to the will of John Gearhart, deceased, retain the balance in his hands, subject to the further order of the court, in that behalf to be made hereafter." On the date of that decree the court awarded execution for the amount of royalty stated in the report.

The pleadings and decrees of the court contain no reference to the deeds, but show a claim by the trustee and recovery based on the will of John Gearhart, deceased. After recital of the lease to Williams, the testator provides thus : " I direct that after my death my executors shall take charge of the same, and from the proceeds thereof first give to my wife, Lydia Gearhart, aforesaid, an ample and sufficient support while she may survive my death, and then they shall divide the remainder equally among my children, share and share alike." The decree recognized an active trust. It was active during the life of Lydia Gearhart. The trustee was entitled to receive the proceeds of the leased coal land during her life, and use the whole, if necessary, for her support. While she lived he had a duty to perform. At her death the remainder was to be divided among the testator's children. Then the duties of the executor or trustee ceased ; the children became entitled to possession and enjoyment. There is nothing from which it can be inferred that the testator intended the trust to continue after the death of his wife. Where no duties and powers are conferred there is no active trust. By conferring duties and powers upon his executors for the benefit of his wife during her life, the testator declared the limit of the trust.

From the Master's opinion it appears that said deeds were adduced before him as evidence, and also the deed from Lydia Gearhart to Perks and Cassanova. He held that the trust was active for both widow and children, and that all the deeds were void. Although the suit was by the trustee who was entitled to recover all unpaid royalty, the Master ruled that the sum of the considerations of the deeds, $1,600, should be deducted from the amount of royalty owing by Perks and Parker ; but as they were insolvent nobody was actually benefited or hurt by the deduction. Leonard was not interested in the amount owing by Perks and Parker ; it mattered not to him whether the decree against them was for payment of the sum they owed, $2,682, or for only $1,082. And the alleged receiving back of the money paid to the grantors has no other foundation than a paper deduction against an uncollectible debt, without procurement or assent of the grantors. The grantors in the deeds were not parties to the bill in equity.

The trust being active during the life of Lydia Gearhart, there was no error in the decrees. If the deed made by her

was invalid, it followed that Leonard was bound to pay the royalty to the trustee precisely according to the decrees. And were it otherwise, the decree would be binding upon the parties until reversed or set aside. "A judgment concludes not merely as to the point decided, but as to the matter which it was necessary to decide, and which was actually decided as the groundwork of the decision itself, though not then directly the point at issue." It was unnecessary to decide anything as to the rights of the appellees, nor does the record show an issue and decree respecting the matter now in controversy. The issue involved the existence of the trust and the validity of the deed by Lydia Gearhart to Perks and Cassanova. It was necessary to decide that the trust was active, and that she had no power to defeat it to entitle the trustee to recover. But it was unnecessary to decide that the trust was created for an indefinite time, to be measured by the duration of the lease which was to continue until all the coal should be mined, unless the lease should be forfeited for a specified cause. Nor was it necessary to decide that persons entitled to the property at the termination of the trust could not convey their interest. These unnecessary rulings appear in the opinion, not in the pleadings and decree.

A record is not conclusive as to any allegations which were immaterial and not traversable: 1 Greenl. Ev., § 528. The trustee set forth the lease and will as the foundation of his right to recover the royalty, and averred that the widow and children of the testator were all living. Had the widow been dead, that fact would have defeated his action, unless for unpaid royalty accrued within her lifetime. Had the respondents obtained releases or grants from all the children, such fact would not have barred the trustee's right to recover the royalty while the widow lived. Then, whether the deeds were pleaded, or averred in answer, or offered in evidence, they were immaterial.

A judgment of a court of concurrent or exclusive jurisdiction is not evidence of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment. Where the defendants pleaded a release to a declaration for a legacy, upon replication and rejoinder, it appeared that the Orphans' Court had decided that the release was valid, and a bar to exceptions by the maker to the account of the executors. It was held that the question of the validity of the release came before the Orphans' Court, not directly but incidentally, the immediate object was not to ascertain if the release was valid. Also, like exceptions being filed by another party, the question had to be decided on the merits, and the point as to the validity of the lease was not actually, or at least neces-

sarily decided.    Therefore, the action was not barred by the judgment of the Orphans' Court: Hibshman *v.* Dulleban, 4. Watts, 183.  As already remarked in the proceeding in equity, the validity of the deeds now in question was not the immediate object of the issue, and whether valid or invalid, the right of the trustee to recover was all the same.

No cause was attempted to be shown before the auditor for setting aside the deeds other than the alleged former recovery. The assignments of error must be sustained.

> Decree reversed, at the cost of the appellees, and it is now considered and decreed that the sums appropriated to David Gearhart, Catharine Goss, Hannah M. Haberacker, and Susan Millward's children be paid to the appellants. Record remitted for further proceeding.