## WILLIS v. WILLIS

(No. 1878; October 1, 1935; 49 Pac. (2d) 670)

For the appellant, there was a brief by *Armstrong and Armstrong,* of Rawlins, and oral argument by *L. E. Armstrong.*

412

For the respondent, there was a brief and an oral argument by *T. S. Taliaferro, Jr.,* of Rock Springs.

*Armstrong and Armstrong* in reply.

414

BLUME, Justice.

In 1931 the plaintiff in this case brought an action in Carbon County, Wyoming, against the defendant, claiming that she was the common law wife of the defendant, asking a divorce from him on certain alleged grounds, and also asking for alimony. The defendant denied in that action that she was his wife, and the court sustained his contention. Thereupon the plaintiff, believing that, if she was not defendant's wife, she should be entitled to recover compensation for services rendered him, commenced the instant action. In her first cause of action herein, she alleged

that she, at the defendant's request, performed services as housekeeper, taking care of a rooming house for defendant, and performing services in defendant's cabaret as hostess, singer and player; that these services were performed from the spring of 1924 until July 24, 1931, a period of seven years and nine months; that the value thereof is $150 per month, or a total of $13,950. Judgment was asked for this amount. For a second cause of action plaintiff alleged that she loaned the defendant the sum of $600 and asked judgment for that sum. The defendant in his amended answer pleaded that during the time mentioned in the petition, plaintiff lived with him as his paramour, without expectation of receiving any reward for whatever work she did; that he supported her and made her large presents; while admitting some services, he denied others, and alleged that she acted as hostess in the cabaret and played the piano for her own pleasure. He also denied that plaintiff loaned him any money. In the reply and amended reply, plaintiff denied the affirmative allegations of defendant, and further pleaded certain estoppels hereinafter mentioned. The case was tried to the court, without a jury. Plaintiff was denied relief on her first cause of action, but was given judgment for $600 on account of a loan made to defendant. From that judgment, the plaintiff has appealed. Other pertinent facts will be mentioned later.

1. In the amended reply, the plaintiff denied each and every "affirmative allegation" of certain paragraphs of the amended answer. The defendant filed a motion to strike the words quoted above, because of indefiniteness. The court struck out the word "affirmative," and left the word "allegation." Error is assigned on account of this action of the court. It is true, as counsel contend, that there is a material difference between a denial of each and every allegation, and a denial of each and every affirmative allegation, since

a party may not desire to make his denial all-inclusive. To determine, however, whether the court's action was erroneous, we should first have to decide as to whether or not a denial of "each and every affirmative allegation" is proper. The authorities are divided on that point. 49 C. J. 338. We do not think that we are called upon to make a decision. Counsel for plaintiff have not pointed out wherein the action of the court has been of prejudice, and after examining the record, we have found none, so that, even if we should hold that the court's action was erroneous, we could not reverse this case on that account.

2. Plaintiff in her original reply averred that the defendant herein pleaded in the divorce action that plaintiff was his servant for pay; that whether she was or was not was an issue in that case and was adjudicated in defendant's favor; that it is, accordingly, *res judicata* herein, and the defendant is estopped from questioning that fact. The defendant answered in the divorce action as follows:

"The defendant denies that the plaintiff and defendant are husband and wife, or that they ever lived together as husband and wife, or that they ever entered into a common law marriage as husband and wife, but on the contrary the defendant avers that on numerous occasions the plaintiff expressly stated to the public that no such relationship as husband and wife existed between the plaintiff and the defendant, and that the plaintiff was the employed domestic of the defendant, performing the duties of a servant and domestic for pay in and about the defendant's premises, located in the town of Green River, Wyoming."

On motion of the defendant, made in the instant action, the court struck out the plaintiff's plea of estoppel, and error is assigned herein on that account. Counsel complain that a motion to strike was not the proper procedure. But striking out part of a pleading will not authorize a reversal of a case where the cor-

rect result is reached. 4 C. J. 942. The question before us, accordingly, is as to whether or not the contention of plaintiff is correct that the fact that plaintiff was defendant's servant for pay is *res judicata*. We may mention that there is considerable doubt that the defendant in his answer in the divorce case averred that plaintiff was a servant for pay. Plaintiff, however, insists that he did. We shall, and in view of the averments in the original reply, we perhaps must, for the purposes of the point now under consideration, assume that to be true. The statement has recently been made that the subject of *res judicata* is "a branch of the law on which there is little learning," (49 Law Quarterly Review 14), and we shall, accordingly, make an attempt to throw a little light upon it.

A distinction is drawn between cases in which the cause of action in a subsequent suit is the same, or substantially the same, as that in a former suit, and those in which the causes of action differ. In the former class of cases, all relevant issues which were or might have been litigated and determined, are held to be adjudicated. A party cannot litigate his rights piecemeal. 34 C. J. 745. It is ordinarily said that in such case, there is an estoppel in bar or by merger. If, however, the subsequent action is upon a different claim or demand, as is true in the case at bar, only those facts and matters, it is said, involved in the prior suit are conclusively established, which were actually or necessarily adjudicated. Cook v. Elmore, 27 Wyo. 163, 192 Pac. 884; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; 34 C. J. 911. The statement needs some clarification, but we may pass that at present. In such case, oddly enough, there is said to be an estoppel by verdict. According to what is said to be the weight of authority, the adjudication must clearly appear in the record or must be shown by extrinsic evidence. A respectable number of authorities,

however, hold that all issues made by the pleadings will be presumed to have been adjudicated. Freeman on Judgments (5th Ed.), Sec. 769; 15 R. C. L. 1049-1050; 34 C. J. 1073; note 25a; note 44 A. S. R. 563. In the case at bar the plaintiff has pleaded that the fact above mentioned was adjudicated, so that in passing on the correctness of the court's ruling, we must treat that allegation to be true. Hence the distinction drawn above between cases in which the cause of action in a subsequent suit is the same or different from that in the first suit, while of some, is not of great assistance herein, and we must determine, accordingly, whether the general statement above mentioned that "only those facts or matters are conclusively established which have actually been adjudicated," includes the converse thereof, namely, that each and every fact so adjudicated is conclusive. For the determination of that point, it is necessary to examine some general rules, apparently, at least according to some of the authorities, applicable in all cases involving the subject of *res judicata,* but in any event fully applicable in a case like that at bar. See Freeman, supra, Sec. 689.

In stating the rule, the courts have not all used the same terminology, and this is apt to be confusing. Notwithstanding the difference in language, however, the fundamental meaning of the different statements seems to be the same, although, as far as we have found, this has not been pointed out, at least clearly so, in the opinions of the courts or by the text-writers on the subject. Many of the authorities state the rule substantially thus: In order that a fact once adjudicated may operate as estoppel in a subsequent suit between the same parties, it is essential that such fact was directly involved within the issues in the former case, or as expressed in other instances, was directly and substantially within such issues. Greenleaf on

Evidence, Sec. 728; Freeman on Judgments (5th Ed.), Sec. 690; Caspers on Estoppel (4th Ed.) 472. Among the many cases we merely cite: Jensen v. Berry & Ball Co., 37 Idaho 394, 216 Pac. 1033; So. Pac. R. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355; Neenan v. Transp. Co., 235 App. Div. 9, 256 N. Y. S. 38; In re Assessment, 93 Okl. 233, 220 Pac. 909; Ford v. Ford, 68 Ala. 143; Kicinko v. Petruska, 259 Pa. 1, 102 Atl. 286; Duchess v. Kingston, 2 Smith's Leading Cases 609, decided in 1776. There is no dissent from the rule as thus stated, so far as we have found. The difficulty lies in applying it and in determining as to what is meant by a "fact directly in issue."

Again, a great many authorities state the rule to be that in order that a formerly adjudicated fact may operate as an estoppel in a subsequent case, it must be such as was necessarily adjudicated in the earlier suit, and that facts found which were not necessary to uphold a former judgment do not conclude the parties. 15 R. C. L. 979, 980; 34 C. J. 927; Black, on Judgments, Sec. 615; Cal. Jurispr. 15, 153; Bigelow, Estoppel (6th Ed.), 170, 172; Brinkerhoff v. Bank, 109 Kans. 700, 205 Pac. 779; Higgins v. Durant, 116 Okl. 152, 243 Pac. 732; Hines v. Welch, 57 App. D. C. 371, 23 F. (2d) 979; Landon v. Clark, 221 Fed. 841; Moran T. & T. Co. v. Lighterage Corp., 62 F. (2d) 761; Buck v. Hunter, 98 Vt. 163, 126 Atl. 504; King v. Mackie, 308 Pa. 306, 162 Atl. 280; Lott v. Lofton, (Tex. Civ. App.) 280 S. W. 312; Lore's Lessee v. Truman, 10 O. S. 45; Chehalis v. Robinson, 87 Wash. 690, 152 Pac. 696; Dolph v. Casualty Co., 303 Mo. 534, 261 S. W. 330; Perkins v. Kirby, 39 R. I. 343, 97 Atl. 884; Hedges v. Mehring, 76 Ind. App. 496, 130 N. E. 423; Crnic v. Fraternal Union, (Mo.) 66 S. W. (2d) 161, 163. Many more cases could be cited. Thus, Freeman, supra, Sec. 689, states that "where the causes of action are different, the former adjudication is conclusive

only as to facts admitted or directly and distinctly put in issue, and the finding of which is necessary to uphold the judgment." Van Fleet, Former Adjudication, 1, 62, states that in order that a fact determined in a former case may be held to be adjudicated, "it must be a matter, the determination of which has become vital to the case, or the pivot, as it were, upon which the case turns, and which the judge is bound to decide in order to render his judgment final and complete." Hoffman v. Hoffman, 330 Ill. 413, in discussing the same matter, states that "even where it appears from the intrinsic evidence that the matter was properly within the issue controverted in the present suit, if it be not shown that the verdict and judgment necessarily involved its consideration and determination, it will not be concluded. * * * To operate as an estoppel by verdict * * * it must also conclusively appear that the matter of fact was so in issue that it was necessarily determined by the court." In Lillis v. Ditch Co., 95 Cal. 553, 30 Pac. 1108, 1110, which contains an excellent discussion on the subject, the court said:

"If, however, the cause of action or demand, upon which the former judgment was rendered, is different from the one prosecuted in the second action, it is then necessary to ascertain as a question of fact what issues or matters were determined in the former action, and then to determine as a matter of law whether those issues and their determination were essential to the former judgment; for it is only issues upon which that judgment depends that the parties are estopped from litigating in any other action. Matters which were merely collateral or incidental to the former determination do not constitute an estoppel, even though they were litigated and decided therein."

Other cases, changing the phraseology somewhat, but meaning the same thing, hold that unless it was essential that a certain fact be determined, it does not operate as an estoppel. Kerr v. Blair, 55 Tex. Civ.

App. 349; Miller v. Miller, 101 Nebr. 405, 163 N. W. 335; Donahue v. Life Ins. Co., 259 N. Y. 98 and cases cited. It is said in Bigelow, supra, 179, note, that "the reason why there is no estoppel concerning matters not necessarily involved in the decision of a case is that, from the very fact that they were not of the essence of the action, they would not require, and in all probability did not receive, that searching examination and scrutiny that would be given to a matter in issue the decision of which would determine the case."

The term "necessary" (and similar terms) should not be taken in an absolute sense. Parties, to an extent at least, may voluntarily enlarge the relevant issues. Freeman, supra, Sec. 675. It is not necessary (in the absolute sense) to determine the title in an action of ejectment, but this may be done. Hoover v. King, 43 Ore. 281, 72 Pac. 880. The extent of the interest of various defendants in premises involved in a foreclosure suit need not necessarily be determined, but it may be. Beronio v. Lumber Company, 129 Cal. 232, 61 Pac. 958; Gulling v. Bank, 29 Nev. 257, 89 Pac. 25. We shall not stop in attempting to explain Town of Flagstaff v. Walsh, (CCA) 9 F. (2d) 590 and similar cases, holding that when a municipality and a contractor are sued jointly for a tort, and the contractor is exonerated, the municipality cannot thereafter relitigate the liability of the former. Turning to a case like or similar to that at bar, a common law marriage consists of two essential elements, namely, agreement and cohabitation. Still, in a divorce action in which such marriage is set up and denied, the court may arrive at a judgment denying plaintiff relief, by merely finding that no agreement has been shown. It is, therefore, unnecessary in that case to decide every material fact. Yet if such fact is decided, it is, as mentioned hereafter, conclusive in a subsequent action between

the same parties. We would have in that case then a situation in which a fact becomes conclusive, though not necessarily decided. We do not believe, however, that the courts are, fundamentally, out of harmony, though some of them may apply the statement here considered more strictly than others, particularly in cases in which the cause of action in the prior suit is different from that in the subsequent suit, and it would seem that when they say that only a fact necessarily decided in the first suit is conclusive in a subsequent one, they treat that statement as substantially the equivalent of what other courts have said on the subject, namely, that unless a fact is directly in issue, or is material, or vital in the case, an adjudication thereof will not be deemed to be conclusive, but will be held to be immaterial, incidental or collateral to the action. That is illustrated, for example, by the statement in Bigelow, supra, 170, where it is said that a "judgment is conclusive by way of estoppel of facts (necessary facts as well as the primary facts in isssue) and none other, without the existence and proof or admission of which it could not have been rendered." See also Doyle v. Hamilton Fish Corp., 234 Fed. 47; Stannard v. Hubbell, 123 N. Y. 520, 25 N. E. 1084; Neilson v. Coal & Oil Co., 78 Minn. 113; Freeman, supra, Sec. 698.

Again, many courts have stated, and it appears to be agreed, that a fact or point determined in a former case cannot operate as an estoppel in a later suit unless it is material, and that in both cases. If it is immaterial, no estoppel can result. We need to cite only a few authorities on that point. 34 C. J. 928; Freeman, supra, Sec. 697; Note 44 A. S. R. 562; 15 R. C. L. 978-980; Hunter v. Troup, 315 Ill. 293, 146 N. E. 321; Schilling v. Leary, 201 Ala. 256, 77 So. 846; Talbot v. Electric & Power Co., 152 Va. 864, 148 S. E. 869; McKenzie v. Trust Co., 262 Mich. 563, 247 N. W. 914.

Counsel for the plaintiff apparently assume that when a fact is pleaded and issue is taken thereon, it is necessarily a material issue in the case. But that is not the law. The requirement of materiality extends even to pleadings. Pleading of an immaterial fact does not make such fact material in the case, notwithstanding the fact that the contrary might be implied in some general statements at times found in the authorities, for instance in 15 R. C. L. 976. The decisions directly in point are clear and decisive that a judgment is not an estoppel as to immaterial facts even though put in issue by the pleadings and directly decided, and this holding is clearly consonant with sound reasoning. Everett & Strode, Law of Estoppel, 34, 35; 22 C. J. 339; 34 C. J. 930; Freeman, supra, Sec. 697; Bigelow, supra, 174, note a; Landon v. Clark, (CCA) 221 Fed. 841; Donahue v. Life Ins. Co., supra, and cases cited; Stannard v. Hubbell, 123 N. Y. 520, 25 N. E. 1084; Hines v. Welch, 57 App. D. C. 371, 23 F. (2d) 979; Chapman v. Hughes, 134 Cal. 641, 58 Pac. 298, 60 Pac. 974; 66 Pac. 982; McGee v. Wineholt, 23 Wash. 748, 63 Pac. 571; Hoffman v. Hoffman, 330 Ill. 413, 421; Oaks v. Buckman, 87 Vt. 187, 88 Atl. 738; Appeal of Forcey, 106 Pa. Super Ct. 508; Lyon v. U. S. Fid. & G. Co., 48 Mont. 591, 140 Pac. 86; Bigelow, supra, 174, note a. The doctrine of *res judicata* does not rest upon the fact that a particular proposition has been affirmed and denied in the pleadings. Black on Judgments, Sec. 614; King City v. Surety Co., 212 Ia. 1230, 238 N. W. 93; Fawcett v. Rhyne, (Ark.) 63 S. W. (2d) 349; Weidner v. Lund, 105 Ill. App. 454, 456. As stated by Greenleaf on Evidence, Sec. 528:

"The principle upon which judgments are held conclusive upon the parties requires that the rule should apply only to that which was *directly in issue,* and not to everything brought into controversy during the trial. * * * A record, therefore, is not held conclusive

as to the truth of any allegations, which were not material nor traversable; but as to things material and traversable, it is conclusive and final."

In Silberstein v. Silberstein, 218 N. Y. 525, 113 N. E. 495, 496, the court said:

"The rule is that a judgment does not work an estoppel as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided."

See also Mehlhop v. Trust Co., 235 N. Y. 102, 138 N. E. 751; House v. Lockwood, 137 N. Y. 259, 268, 33 N. E. 595.

On the other hand, the courts, as already stated, are in agreement, that an adjudication of a material fact, or as sometimes stated, of a controlling fact, is conclusive between the parties in a subsequent case, if that fact is also material or controlling in that case. Freeman, supra, Sec. 698; 15 R. C. L. 974, 976; Fletcher v. Perry, 104 Vt. 229, 158 Atl. 679; Guaranty Trust Co. v. Trust Co., 144 Misc. 127, 258 N. Y. S. 465; Hoffman v. Hoffman, supra; Bigelow, on Estoppel (6th Ed.) 172, note. Many other cases could be cited. The fact whether or not the plaintiff was a servant, or a servant for pay, is, of course, of material and controlling importance in the case at bar. Assuming, then, as above mentioned, that all issues raised in the divorce action were decided, was the fact whether the plaintiff was a servant for pay also of material or controlling importance in that case?

Let us, to elucidate the subject further, return to the question as to what is meant by the term "fact directly in issue," for if a fact is immaterial, it cannot be said to be directly in issue. This is shown by a simple illustration given by Freeman, supra, Sec. 690, where he states that if, in an action for trespass, "the defendant alleges and attempts to prove that he was in another place than that where the plaintiff's evidence

would show him to have been at a certain time, it may be said that this controverted fact is a matter in issue between the parties. But this is not matter in issue, within the meaning of the rule." In Campbell v. Consalus, 25 N. Y. 613, it appears that an action was brought by a mortgagor to enjoin the mortgagee from foreclosing the mortgage on the ground that the indebtedness due had been paid. The court held against the mortgagor, finding that there was due on the mortgage the sum of $2754.88. Thereafter the mortgagee brought an action to foreclose his mortgage, and contended that the question of the amount found due in the former action was *res judicata*. The court held that this question was not directly in issue in the former case, but was merely incidental and collateral thereto. Numberless other illustrations could be given. It was said in Appeal of Forcey, 106 Pa. 508, 516, that "it is the immediate object in view that is controlling." Freeman on Judgments, supra, Sec. 690, states that "if the judgment can be correct, whether the fact in question exists or not, it is not directly in issue, and, therefore, does not become *res judicata*." That seems to fit the instant case. So it is stated by Van Fleet, supra, 1, 60, that "it appears to be generally agreed upon that a fact cannot be in issue directly, when the judgment can be correct, whether that fact exists or not." The identical thought appears to be expressed in Bigelow, supra, 206, where it is said that a "judgment is conclusive only in respect of matters necessarily inconsistent with it." Other authorities have said that a matter in issue includes only that upon which the plaintiff proceeds in his action, and which the defendant denies or admits. 34 C. J. 921; Ellerd v. Ellison, (Tex. Civ. App.) 165 S. W. 876; Kerr v. Blair, 55 Tex. Civ. App. 349, 118 S. W. 791; Van Fleet, supra, 1, 62, 63; Freeman, supra, Sec. 690; United Bank & Trust Co. v. Hunt, (Cal. App.) 28 P. (2d) 386. The state-

ment is not quite complete, inasmuch as an issue may be initiated by an affirmative plea of the defendant. In any event, however, it seems clear that in order to be an issue in a case, it is important to consider the scope of the pleadings of the plaintiff and the purpose of the action. Stannard v. Hubbell, 123 N. Y. 520, 25 N. E. 1084. Van Fleet, supra, 1, 515, states that whether or not a matter is in issue depends upon the relief demanded.

Let us turn, then, to the facts in the case at bar. We shall not investigate whether a common law marriage can be valid in this state. What, then, was the direct issue in the divorce action, in so far as it can have any possible relation to the pending case? Clearly, whether or not there was a common law marriage. The essential elements of such marriage are a mutual agreement or consent to such marriage and cohabitation as husband and wife. 38 C. J. 1316-1318. These facts then were those which were material. They and they only were directly in issue, in so far as denied; to establish them and them only was the immediate object of the suit. Whether or not the plaintiff was a servant for pay was in no sense within the scope and purpose of the action and could at most have a bearing only as evidence whether or not the marriage existed. It is certain that it was not necessary to decide that point. Nor was it a material fact. It was not vital to the case; it was not the point upon which the case turned. The judgment in the divorce action can be wholly correct, whether that fact existed or not. That plaintiff was not a servant is entirely consistent with the fact that plaintiff and defendant were not married. If there was no common law marriage, the plaintiff may have been defendant's servant, or she may have been the servant of someone else, or no servant at all. It was a matter wholly collateral and incidental in the divorce action, and defendant's admission in that con-

nection could not, accordingly, constitute an estoppel in the case at bar, but could be used only as evidence in establishing plaintiff's cause of action herein.

2. Plaintiff claims that defendant must be held to be estopped from claiming that she was not his servant for pay, irrespective of the adjudication of that point, because, as claimed, a party cannot take a position in one suit inconsistent with that taken in another. She pleaded such estoppel in her reply, but this allegation, too, was stricken. She was permitted to introduce the pleading, which is claimed to contain the inconsistent position—above quoted—and hence, if there was any error in the court's ruling in this connection, it was cured. 49 C. J. 940. However, the question whether an estoppel can actually be relied on still remains. As far as inconsistency of positions is concerned, the plaintiff is as grave an offender as the defendant. Presumably she denied in the divorce action that she was a servant for pay, for she pleads herein that this was an issue and was decided against her. And it is stated in 21 C. J. 1234 that, as a general rule, "admissions in pleadings in a formal action which were denied by the opposite party work no estoppel. A party will not be heard to charge his adversary by a supposed admission of what he himself denied." Moreover, it is said in 21 C. J. 1225 that, in order that inconsistent conduct in judicial proceedings may operate as an estoppel, it

"is essential also that the party claiming the estoppel should have been misled by his opponent's conduct, that he should have acted in reliance thereon, and that his rights would be injuriously affected, if his opponent were permitted to change his position. When no wrong is done a change in position should and will be allowed. The rule has no application where the knowledge or means of knowledge of both parties is equal."

See further 21 C. J. 1230, 1231, 1233-34.

The plaintiff in the case at bar knew the facts as well as the defendant. She in no way acted in reliance on his statements in the divorce action, or changed her position by reason thereof. We cannot, accordingly, hold with plaintiff on the point here under discussion.

3. A further estoppel is claimed. The defendant in his answer in the case at bar pleaded, as already stated, that the plaintiff was his paramour and mistress. Plaintiff in paragraph eleven of her amended reply pleaded the divorce action, the allegation therein by plaintiff that plaintiff and defendant contracted a common law marriage and cohabited as husband and wife; that the defendant therein answered—as already quoted verbatim toward the beginning of this opinion —the answer specifically denying that they were husband and wife or that the plaintiff and defendant ever lived together as husband and wife, and that, accordingly, defendant is estopped from now claiming that the plaintiff lived with defendant as his paramour and mistress. A demurrer was filed to this plea and sustained, and plaintiff claims this as error. Counsel argue that the elements of a common law marriage consist of an agreement and cohabitation; that by denying in the divorce action that plaintiff and defendant lived together as husband and wife he denied that there was cohabitation; that he was sustained in his claim, and that he cannot now take a different position.

The rules of law already quoted apply to this argument. Plaintiff was aware of the facts as well as defendant. She in no way changed her position by reason of the denials of the defendant in the divorce action. Moreover, it is difficult to see how defendant by denying that he and plaintiff lived together as husband and wife denied all cohabitation. The ordinary person in any event would come to no such conclusion as counsel

have by reason of the form of the denial. If we enter into the field of legal pleading, then, if the denial of the defendant in the divorce action was not merely a straight denial that the parties lived together in a particular relationship, namely, as husband and wife— which we believe to be the correct construction—then the denial must be considered as a negative pregnant, namely, affirmatively alleging that the parties lived together, but denying that this was as husband and wife. And the judgment in the divorce action must, or at least may be, construed as consistent with what has here been stated.

4. The remaining assignments of error are substantially to the effect that the judgment is not sustained by substantial evidence, and is, therefore, contrary to law. In this connection it must be borne in mind that the appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. 4 C. J. 857. The arguments of counsel trying to show how unsubstantial is defendant's evidence are so many that, to keep this opinion within reasonable bounds, we cannot attempt to answer them one by one. And it must be remembered that the credibility of witnesses was a matter for the trial court. We shall, however, endeavor to mention and to some extent discuss what we consider the main points. Only an outline of the testimony needs to be given.

The plaintiff testified that in October, 1923, the defendant came to her and desired her to take charge of his rooming house; that she did so, soon thereafter; that at that time, her husband, Malone, had not been heard from for ten or eleven years, and he had not

supported her; that she therefore thought that he was dead, and she was able to enter into another marriage; that after working for defendant for about two weeks, they commenced to live together as husband and wife; she started to use his name and continued using it to this time, and people generally believed that they were married; that soon thereafter she found out that her husband was not dead, and she thereafter, at defendant's instigation, procured a divorce from him, and did so, so "as to make sure"; that while living with defendant, she believed that she was his wife; that she not only took care of defendant's rooming house, but also his children, and his cabaret, the receipts from which were carefully collected by defendant every night; that the value of these services is the sum of $150 a month, which is due her for nearly eight years, and for which payment has not been made. Plaintiff was corroborated in a number of points by other witnesses, including her daughter, who called the defendant "papa" which, according to the defendant's testimony, was an assumed right, just as the name of Mrs. Willis was on plaintiff's part. Plaintiff also introduced part of the defendant's pleadings in the divorce case, and part of the original answer in the instant suit.

Defendant testified that his wife had died in August, 1923; that about six weeks thereafter the plaintiff, who was then working in a "hookshop," came to him and sought his protection; that, according to her story, she had been living with one Jack Crawford, who became jealous of her, so that she feared violence at his hands; that she "just kept pushing herself into my confidence until she got into my house, and she came right in and went to living there"; that they commenced to cohabit on the day when plaintiff came to his place, and that she was his paramour; that he made no agreement of any kind with her, except that

he would try to please her in every way and that she could have the things she wanted; that he never married her; that he as well as she knew that she then had a husband living; that she knew this through newspapers and through letters received from Malone, which she showed him; that this "was immediately when she first came here," and apparently (Q. 649) even before she took up her abode with defendant; that plaintiff just took general charge of things, but never did any manual labor, other people being hired by him at all times to do that; nor did she take care of the rooming house, which was occupied but to a small extent; that plaintiff's daughter and son lived in his home for some years; that she did little cooking, except for herself and children; that when plaintiff wanted money, he gave it to her; that he gave her a good deal, and more than paid her for whatever she did for him; that defendant conducted a pool hall, and owned the building in which a cabaret was conducted; that this cabaret was conducted by the plaintiff; that she kept all the receipts and had some women—prostitutes—working for her; that he, however, paid all the bills, and "it got me down to where I couldn't pay my taxes or anything else." Other points will be mentioned hereafter.

(a) Counsel for the plaintiff argue that the case comes within the rule mentioned in note to In re Fox's Estate, 178 Wis. 369, 190 N. W. 90, 91, 31 A. L. R. 420, that whenever a woman enters into a marriage with a man, believing in good faith that she has a right to do so, and it afterwards appears that the marriage is invalid, she can recover the reasonable value of her services. And counsel assert with great confidence that plaintiff's good faith in this case is conclusively established, and that she was defrauded by the defendant. A careful reading of the record, however, discloses, we think, that the court was not

bound to share counsel's confidence, and it was warranted to find, as it impliedly did, that the contrary is true. Counsel say that no such finding can be implied, for the reason that it would be inconsistent with the court's finding on the second cause of action—giving judgment to the plaintiff for a loan made by her to defendant, and that this action of the court "necessarily included a finding that plaintiff was acting in good faith." The connection is not perceivable. Plaintiff could have made a loan to defendant, whether she was his wife, paramour, servant or a stranger, and whether plaintiff was in good or in bad faith in living with defendant. The meretricious life of the parties began while plaintiff was still married to Malone. She did not get a divorce from him till the following year. That fact alone might be taken by the court as wholly contradictory to the claim of good faith. The argument that Malone *might* have procured a divorce from plaintiff previously, or that their marriage *might* have been invalid, is not appealing. According to defendant's testimony, which the court had a right to credit, plaintiff claimed Malone as her husband. That was a sufficient admission of the existing marriage (Kiesel v. Henecker, 35 Wyo. 300, 311, 249 Pac. 81), and the court was not bound to conjecture that her status *might* be otherwise. Furthermore, there is no serious claim that Malone was not plaintiff's husband, and that relationship having been shown, it would be presumed to continue until the contrary was shown (2 C. J. 16), unless he had not been heard from for a period of seven years. It is true that plaintiff testified that she had not heard from Malone for ten or eleven years, and believed him to be dead. But a claim of that kind is easily made, and the court was not bound to believe her on that point, and evidently did not. Moreover, according to defendant's testimony, she had heard from Malone both through newspapers and letters.

And the fact that she had definite knowledge of Malone's existence within a comparatively short time after the fall of 1923, and then procured a divorce from him, tends to throw a doubt on her claim just mentioned. Counsel say that defendant's testimony cannot be taken seriously. But that argument is obviously one that can properly be addressed only to the trial court, and, unless in exceptional cases, we are not warranted in depriving it of the exclusive right to weigh the evidence. Counsel seek to apply the rule that a person who seeks to attack a second marriage must show that neither of the parties to the first marriage had obtained a divorce, and that a strong presumption exists in favor of a second marriage. Kiesel v. Henecker, supra. These rules, however, can not have any application here. There was no marriage between plaintiff and defendant. That fact had already been adjudicated. The only question here is as to the good faith of the plaintiff. It is, of course, true, as counsel say, that good faith should be presumed, and that presumption would, perhaps, be strengthened, at least in some cases, when a man and a woman live together for a number of years. But there was evidence here to overcome such presumption. The court was warranted to find, from defendant's testimony, that the parties commenced to live together when they knew that their relationship would be meretricious, and nothing was shown herein that the subsequent relationship was changed in any way. We cannot, accordingly, sustain counsel's contention made as above mentioned.

(b) A further argument, however, bears upon the point just discussed. Counsel sought to avoid, in the direct examination of the plaintiff, going into the claim that she was the paramour of the defendant, and did not ask her anything about it. On cross-examination she testified, as already mentioned, that she had

not heard from her husband for many years; that she believed him dead, thought that she was at liberty to enter into a common law marriage, and entered into that relation believing that she had a right to do so. Her counsel claim that these matters were not proper to be brought out on cross-examination, and she not having been directly contradicted as to her beliefs, the defendant is bound by her answers, and that her good faith is, accordingly, established by unimpeached and uncontradicted testimony. The matters mentioned were in substance, though not in detail, brought out in answer to the question, on cross-examination, as to how the plaintiff came to have the name of Willis. This name, given by plaintiff on direct examination, was of peculiar significance in this case, and the foregoing question propounded to her was well within the proper range of cross-examination, and it would hardly seem fair that the defendant should be bound by the answers. We need not rest our decision on that. Suppose that a wife should sue her husband for wages, not in any manner disclosing on direct examination that she is defendant's wife, and should, on cross-examination, deny it. Should defendant be bound by her answer and suffer a judgment to go against him? That, it would seem, should hardly be so, if for no other reason than that this would be against public policy. The same, or nearly the same, reasoning would seem to apply in the case at bar. However that may be, if the plaintiff had, on direct examination, testified that she was a servant of defendant for pay, then clearly, questions eliciting that she was defendant's paramour instead, would have been proper cross-examination. Plaintiff did not so testify directly, but she did indirectly. When she testified that she was requested by defendant to perform services for him; that she performed them, and that their value was the sum of $150 per month, she substantially testified, though

not in so many words, that she was the defendant's servant for pay. It is said in 70 C. J. 627 that "it is proper cross-examination to interrogate a witness as to facts or circumstances inconsistent with, and contradictory of, the testimony, or acts or conduct on his part at variance and inconsistent with what would be natural and probable if his statements on his direct examination were true." A witness may be cross-examined as to matters which tend to modify or explain his statements on direct examination. 70 C. J. 657. And it is held that, in the court's discretion, a greater latitude is allowed in the case of a party than in the case of a stranger to the suit. 70 C. J. 669, 673. Tested by these rules, we think it is clear that testimony that plaintiff was the paramour of defendant is inconsistent with testimony that she was his servant for pay. The contention of counsel for plaintiff, then, to the effect that defendant was bound by the testimony of plaintiff on the point here discussed, cannot be sustained.

(c) In his original answer, the defendant, as a second defense, interposed the following plea:

"And the defendant further answering plaintiff's petition, and as a second defense, avers that between the 24th of October, 1923, and the 24th day of July, 1931, the plaintiff lived with the defendant as a domestic servant, receiving from and at the expense of the defendant her board, her room, and her clothing, and divers sums of money, which the plaintiff accepted from the defendant in full remuneration for all services rendered by the plaintiff to the defendant from October 24th, 1923, to July 24, 1931."

As a third defense, the defendant pleaded that the plaintiff lived with the defendant as his mistress and paramour. The second defense of the original answer was withdrawn on November 14, 1932, and the whole answer was superseded on November 19, 1932, by an

amended answer. Counsel while conceding that the statement in the foregoing pleading to the effect that plaintiff was a domestic servant, is only an admission, and as such admissible in evidence in the trial of the case (Quealy L. & L. Co. v. George, 45 Wyo. 254, 18 P. (2d) 253), appear to claim that the last part of the plea is a plea of payment, and as such admits that the debt existed, and that such admission is conclusive on the defendant, citing among other authorities 48 C. J. 675. That, however, is not the law under the facts in this case. A pleading which has been withdrawn or stricken out or is superseded by amendment is out of the case in its capacity as pleading, and the pleader is no longer concluded by statements therein, although they may be competent as admissions. 22 C. J. 387; 49 C. J. 559-560. And under the circumstances in this case, and in view of defendant's other pleadings, the admission could not be considered of any great force. In fact, aside from the statement referring to plaintiff as a domestic servant, the pleading is in conformity with the general theory of the defendant.

(d) Plaintiff claims that an express contract of employment was shown in this case, even though it does not cover the amount of remuneration to be paid, for in the absence of an agreement as to the wages, she can recover the reasonable value of her services; that, accordingly, this case comes within the rule of some of the cases which hold that when there is an express contract of employment, not entered into in contemplation of an illicit relation, the fact that the parties also lived together in an illegal relation cannot affect it. Emmerson v. Botkin, 26 Okl. 218, 109 Pac. 531, 29 L. R. A. (N. S.) 786, 138 A. S. R. 953) and cases cited. We think, however, that there is sufficient evidence in the record which authorized the court in finding against plaintiff on this contention. It is argued that plaintiff's testimony showing such contract was

not in any way contradicted. It is contended that the defendant's statement to the effect that he entered into no contract with plaintiff whatever is merely a legal conclusion, and of no probative force. Whatever may be the rule in this connection in other cases, we cannot say here that defendant denied the contract by a mere legal conclusion, for he also undertook to state the substance of what actually was said, namely, that he would give plaintiff consideration, be kind to her and that she could have what she wanted. Furthermore, the other testimony of the defendant in relating the beginning of the relations of the parties is so wholly at variance with the testimony of the plaintiff, as to be equivalent to a denial thereof. Nor should it be forgotten, that the fact that no remuneration was agreed on was, under the facts in this case, a circumstance indicating, along with other testimony, that no contract of employment was made.

(e) There remains for disposition then the question as to whether or not the plaintiff is entitled to recover under an implied contract. It appears to be a well settled rule "that a woman who knowingly and voluntarily lives in illicit relations with a man cannot recover on an implied contract for services rendered him during such relationship. Not only does the relationship as husband and wife negative that of master and servant, but such cohabitation, being in violation of principles of morality and chastity, and so against public policy, the law will not imply a promise to pay for services rendered under such circumstances." Stewart v. Waterman, 97 Vt. 408, 123 Atl. 524; Wolf v. Fox, 178 Wisc. 369, 190 N. W. 90, 31 A. L. R. 420; Walraven v. Jones, 1 Houst. (Del.) 355; McDonald v. Fleming, 12 B. Monroe (51 Ky.) 285; Lytle v. Newell, 24 Ky. L. 188, 68 S. W. 118; 40 Cyc. 2823. In 40 Cyc. 2823 the rule is stated thus:

"A wife is not entitled to compensation for services rendered her husband. And where a woman lives with a man as his mistress or concubine, she can not recover for such services as are incidental to the relation in which they live, unless a contract for payment is shown."

Counsel for the plaintiff, seizing upon this terminology, also contained in some of the cases, assumes that only certain, and not all, work is *incidental to the relationship of the parties*. And while they concede that ordinary housework is so incidental, they doubt that taking care of the children of defendant was, and contend that plaintiff can in any event recover for taking care of the rooming house of defendant and for her services in the cabaret; that in these cases the law implies that he must pay the reasonable value of such services. Counsel have cited us to no authorities so holding, and there are no cases, so far as we have found, which expressly involved that point. We think counsel's assumption and contention is unsound. A mistress cannot, ordinarily, recover for services from her paramour for reasons similar to those which apply in the case of a wife. Many wives might resent the assumption that the only work incidental to her relationship with her husband is that of the ordinary housework. Many of them help their husbands in stores and other places. Some husbands in the professions have wives of the same profession, the latter acting as their partners or assistants. Would these wives be able to recover from their husbands for the value of the services thus rendered on an implied contract? We have found no authority therefor. In Emerson v. Botkin, supra, the services of a mistress consisted not only of general housework, but also of nursing and farmwork. There is no intimation in that case that nursing and farmwork was not incidental to the relationship which she bore to the man, and the

court stated that she could not recover for her services, which included all, without showing an express contract. In Rhodes v. Stone, 63 Hun. 624, 17 N. Y. S. 561, a mistress performed not only ordinary housework, but she also labored as an ordinary farm hand, clearing land, pulling stumps, sowing, planting, cultivating and harvesting crops. The court, while holding that she could recover the value of her services upon an express contract, also stated that the contrary would be true in the absence thereof. In cases of this kind the law will not imply the relation of master and servant (Stewart v. Waterman, supra), and that relationship may, of course, cover many kinds of services. Thus it is said in Swires v. Parsons, 5 Watts & S. (Pa.) 357:

> "It is enough for plaintiff, prima facie, to show labor performed to raise an implied assumpsit to pay for it. But the facts in evidence rebut the implication of a promise, which would otherwise arise; for the relation which they bore to each other is inconsistent with any understanding for compensation. As it is a situation in which she voluntarily placed herself, she must rely upon his bounty for support. She cannot now turn round and rely upon compensation founded on the relation of master and servant. If the woman can maintain a suit against the man, cases may occur where the man may, by parity of reasoning, maintain suit against the woman; and it may sometimes be a difficult matter to settle the account between them. A man cannot be made a debtor against his will."

So in Robbins v. Potter, 98 Mass. 532, the court, not drawing any distinction between classes of services, stated that there "is no contract implied by law for services rendered between parties living together as husband and wife."

Furthermore, it is, under the evidence, doubtful whether the plaintiff's services in connection with the rooming house or cabaret were of any value to the

defendant so as to be compensable. According to the defendant's testimony she merely supervised the rooming house in a general way, and as part of her general housework, and not separable from the latter, and that she and not he conducted the cabaret, and that she received the income thereof. Her counsel herein have with commendable zeal stressed and argued every point that could possibly be brought to bear upon her right of recovery. The case is not one, however, where the court should go out of its way to seek to find some rule by which such recovery would be permitted. Plaintiff was not a young, innocent girl, callously seduced to live in an immoral relation. She was a mature woman; she must have entered into relation with defendant fully aware of its pitfalls, of its trials, its tribulations, its joys and its sorrows. We may discount to some extent the testimony of the defendant, and yet find ample in the record to justify the trial court's conclusions. Indeed, we do not find absent testimony which leads to some doubt as to whether we should consider the plaintiff or the defendant the greater sinner.

The judgment below must, accordingly, be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.